**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| IN RE CELEBREX (CELECOXIB) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All End-Payor Actions | Lead Case No. 2:14-cv-00395 |

**END-PAYOR PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO PFIZER'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.     EPPS PROPERLY ALLEGE *WALKER PROCESS* FRAUD AND SHAM LITIGATION ..................................................................................................... 2

II.    FEDERAL PATENT LAW DOES NOT PREEMPT EPPS' CLAIMS. ........................... 3

    A.    Long-Standing Supreme Court Precedent Creates a Presumption Against Preemption in Antitrust Cases. ............................................... 4

    B.    State-Law Claims Do Not Frustrate the Objectives of Patent Law. ...................... 4

    C.    Plaintiffs' Claims Are Not Preempted Under the Market Conduct Test. .............. 5

III.    EPPS HAVE STANDING TO ASSERT STATE LAW CLAIMS. ................................... 8

    A.    Plaintiffs Have Article III Standing. ....................................................... 8

    B.    Rule 23 Determines Whether Plaintiffs May Pursue Claims of Absent Class Members in Other States. .............................................................. 9

    C.    It Is Premature to Determine the Adequacy of Named Plaintiffs to Represent Absent Class Members. ....................................................... 11

    D.    Under Rule 23, Named Plaintiffs Can Pursue the Claims of Absent Class Members. ............................................................................. 12

    E.    Named Plaintiffs Need Not Seek Redress Under the Same State Laws As Absent Class Members. ..................................................................... 13

IV.    EPPS STATE VALID ANTITRUST CLAIMS. ....................................................... 17

    A.    EPPs Have Standing to Assert Antitrust Claims in Florida, Illinois, Utah and Rhode Island ........................................................................... 17

    B.    EPPs Meet Intrastate Pleading Requirements. ........................................... 20

    C.    EPPs State Valid Claims Under California, New York, and Tennessee Statutes ....................................................................................... 23

    D.    Plaintiffs Plead a Cognizable Future Injury. ............................................. 23

V.    EPPS STATE VALID CONSUMER PROTECTION CLAIMS. ..................................... 24

    A.    California ....................................................................................... 24

i

B.     Massachusetts ................................................................................ 26

C.     Vermont ........................................................................................... 27

VI.    EPPS STATE CLAIMS FOR UNJUST ENRICHMENT UNDER COMMON
LAW. ................................................................................................................ 28

      A.     EPPs Adequately Plead Claims for Unjust Enrichment in the District of
Columbia, Puerto Rico, and All States Except Indiana and Ohio. ....................... 29

           1.     Plaintiffs Plead Facts From Which the Court Can Infer All the
Elements of Unjust Enrichment for Each Jurisdiction............................. 29

           2.     California, Georgia, Illinois, and Mississippi All Recognize a
Cause of Action for Unjust Enrichment..................................................... 30

           3.     Plaintiffs Plead an Equitable Basis to Recover for Unjust
Enrichment. ................................................................................................. 32

           4.     Unjust Enrichment Claims Do Not Require Additional Elements of
Privity or a Direct Benefit......................................................................... 33

      B.     Common Law Unjust Enrichment Is Not Preempted by Antitrust Law............... 42

           1.     It is Premature to Determine Whether Plaintiffs Have an Adequate
Remedy at Law. .......................................................................................... 42

           2.     Pfizer Confuses Recovery for Statutory Antitrust Treble Damages
with Common Law Equitable Relief for Unjust Enrichment. .................. 43

CONCLUSION ....................................................................................................................... 45

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)..............................................38

*Abbott Labs. v. Brennan*,
   952 F.2d 1346 (Fed. Circ. 1991).............................................................................................6

*Alessi v. Bowen Court Condominium*,
   No. 03-0235, 2010 WL 897246 (R.I. Super. Mar. 10, 2010) ..................................................40

*Allee v. Medrano*,
   416 U.S. 802 (1974)...............................................................................................................24

*Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*,
   843 A.2d 252 (Md. Ct. Spec. App. 2004) ...............................................................................45

*Am. Sales Co., LLC v. Pfizer, Inc. et al.*,
   No. 2:14-cv-00361 (E.D. Va. Nov. 12, 2014)............................................................................2

*Apache Corp. v. MDU Resources Group, Inc.*,
   603 N.W.2d 891 (N.D. 1999) .................................................................................................39

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) .................................................................................................10

*In re Auto. Parts Antitrust Litig.*,
   29 F. Supp. 3d 982 (E.D. Mich. 2014)...................................................................................22

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)............................10, 21, 22

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-2311, 2014 WL 2993753 (E.D. Mich. July 3, 2014)............................................38

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-2311, 2014 WL 4793850 (E.D. Mich. Sept. 25, 2014) ......................34, 39, 40, 41

*Baker Constr. Co. v. City of Burlington*,
   No. 09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009) ...............................................39

*Baker v. Family Credit Counseling Corp.*,
   440 F. Supp. 2d 392 (E.D. Pa. 2006) .....................................................................................40

*Bank of Am. Corp. v. Gibbons*,
   918 A.2d 565 (Md. Ct. Spec. App. 2007) ...............................................................................38

*Beco Constr. Co. v. Bannock Paving Co.*,
  797 P.2d 863 (Idaho 1990) ........................................................................................36

*Bergman v. Spruce Peak Realty, LLC*,
  847 F. Supp. 2d 653 (D. Vt. 2012) ............................................................................28

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ......................................................................................31

*Blessing v. Sirius XM Radio Inc.*,
  756 F. Supp. 2d 445 (S.D.N.Y. 2010) .......................................................................10

*Blum v. Yarestky*,
  457 U.S. 991 (1982) ..................................................................................................13

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ....................................................................................................4

*Boyce v. Freeman*,
  39 P.3d 1062 (Wyo. 2002) .........................................................................................42

*Boynton v. Headwaters, Inc.*,
  252 F.R.D. 397 (W.D. Tenn. 2008) ...........................................................................14

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .....................................................................................10

*Brady v. Thurston Motor Lines*,
  726 F.2d 136 (4th Cir. 1984) .......................................................................................9

*In re Brand Name Prescription Drug Antitrust Litig.*,
  123 F.3d 599 (7th Cir. 1997) .....................................................................................21

*Brenner v. Future Graphics, LLC*,
  258 F.R.D. 561 (N.D. Ga. 2007) ...............................................................................36

*Brown v. Cameron-Brown Co.*,
  92 F.R.D. 32 (E.D. Va. 1981) ....................................................................................14

*Brown v. Pinnacle Restoration LLC*,
  12-cv-0550, 2013 WL 3148654 (Ariz. Ct. App. June 18, 2013) ...............................35

*Bryant v. Wash. Mut. Bank*,
  524 F. Supp. 2d 753 (W.D. Va. 2007) .......................................................................29

*Burlington N. R.R. Co. v. Woods*,
  480 U.S. 1 (1987) ......................................................................................................15

*Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*,
   445 F. Supp. 2d 94 (D. Mass. 2006) ...................................................................27

*In re Buspirone Patent Litig.*,
   185 F. Supp. 2d 363 (S.D.N.Y. 2002) .................................................................10

*California v. ARC America Corp.*,
   490 U.S. 93 (1989) ..............................................................................................1, 2, 4

*California v. Infineon Techs. AG*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) ..............................................................22

*Californians for Population Stabilization v. Hewlett-Packard Co.*,
   58 Cal. App. 4th 273, 67 Cal. Rptr. 2d 621 (Cal. Ct. App. 1997) .........................26

*Cardiovention Inc. v. Medtronic, Inc.*,
   430 F. Supp. 2d 933 (D. Minn. 2006) ...................................................................6

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000)....................................................... *passim*

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) .....................................................................................24

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005).................................................................................13

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   6 F.3d 177 (4th Cir. 1993) .....................................................................................9

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009).............................................................10, 21

*In re Chocolate Confectionary Antitrust Litig.*,
   749 F. Supp. 2d 224 (M.D. Pa. 2010) ......................................................... *passim*

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
   762 N.E.2d 303 (Mass. 2002) ..............................................................................26

*In re Ciprofloxin Hydrochloride Hydrochloride Antitrust Litigation*,
   363 F. Supp. 2d 514 (E.D.N.Y. 2005) ...................................................................8

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ................................................................................31

*Com. ex rel. Pappert v. Tap Pharm. Prods., Inc.*,
   885 A.2d 1127 (Pa. Commw. Ct. 2005) ................................................................40

*Concrete Prods. Co. v. Salt Lake Cnty.*,
 734 P.2d 910 (Utah 1987) ................................................................................41

*Cortez v. Purolator Air Filtration Prods. Co.*,
 23 Cal. 4th 163, 999 P.2d 706 (Cal. 2000) ......................................................26

*Cox v. Microsoft Corp.*,
 778 N.Y.S.2d 147 (N.Y. App. Div. 2004) ........................................................23

*Cox v. Microsoft Corp.*,
 8 A.D.3d 39 (N.Y. App. Div. 2004) ............................................................34, 39

*D.A. Hill Co. v. Clevetrust Realty Investors*,
 573 A.2d 1005 (Pa. 1990) ................................................................................40

*D.R. Ward Constr. Co. v. Rohm and Haas Co.*,
 470 F. Supp. 2d 485 (E.D. Pa. 2006) ...............................................................32

*Daiichi Sankyo, Inc. v. Apotex, Inc.*,
 No. 03-cv-0937, 2009 U.S. Dist. LEXIS 42154 (D.N.J. May 19, 2009) .................8

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006) ........................................................................................15

*Danny Lynn Electrical & Plumbing, LLC v. Veolia ES Solid Waste Southeast, Inc.*,
 No. 09-cv-192, 2011 WL 2893629 (M.D. Ala. July 19, 2011) .............................35

*Davis v. Fed. Election Comm'n*,
 554 U.S. 724 (2008) ........................................................................................16

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
 903 F. Supp. 2d 198 (S.D.N.Y. 2012) ........................................................ *passim*

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) ...........................................................................10

*Deiter v. Microsoft Corp.*,
 436 F.3d 461 (4th Cir. 2006) ...........................................................................14

*Desiano v. Warner-Lambert Co.*,
 326 F.3d 339 (2d Cir. 2003) .............................................................................34

*In re Digital Music Antitrust Litig.*,
 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ....................................................10, 21, 22

*Doss v. Homecoming Fin. Network, Inc.*,
 210 S.W.3d 706 (Tex. App. 2006) ....................................................................41

*Dow Chemical Co. v. Exxon Corp.*,
    139 F.3d 1470 (Fed. Cir. 1998) .......................................................................5, 6

*Effler v. Pyles*,
    380 S.E.2d 149 (N.C. Ct. App. 1989) ...................................................................39

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) ...........................................................................................27

*Ellmaker v. Tabor*,
    ___P.3d___, 2015 WL 797642 (Idaho Feb. 26, 2015) ..........................................36

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*,
    411 S.E.2d 916 (N.C. 1992) ..................................................................................39

*In re Ford Tailgate Litigation*,
    No. 11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ......................26

*FTC v. 1263523 Ontario, Inc.*,
    205 F. Supp. 2d 218 (S.D.N.Y. 2002) ...................................................................24

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) ....................................................30, 38, 44, 45

*GFI, Inc. v. Bean Station Furniture*,
    286 F. Supp. 2d 663 (M.D.N.C. 2003) ...................................................................6

*Ghirardo v. Antonioli*,
    924 P.2d 996 (Cal. 1996) .................................................................................30, 31

*Gladstone, Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979) .................................................................................................9

*Glenwood Farms, Inc. v. Ivey*,
    228 F.R.D. 47 (D. Me. 2005) ................................................................................38

*Gonzalez v. Pepsico, Inc.*,
    489 F. Supp. 2d 1233 (D. Kan. 2007) ...................................................................37

*Goodman v. Lukens Steel Co.*,
    777 F.2d 113 (3d Cir. 1985) ............................................................................10, 11

*Gunn v. Minton*,
    133 S. Ct. 1059 (2013) ...........................................................................................5

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) .................................................................43

*Hausam v. Schnabl*,
  887 P.2d 1076 (Idaho 1994)........................................................................................36

*Hayden Lake Fire Prot. Dist. v. Alcorn*,
  111 P.3d 73 (Idaho 2005)...........................................................................................36

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
  910 P.2d 839 (Kan. 1996)..........................................................................................37

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012).....................................................................14

*Helms v. Richmond-Petersburg Tpk. Auth.*,
  52 F.R.D. 530 (E.D. Va. 1971)..................................................................................15

*Hirsch v. Bank of Am.*,
  107 Cal. App. 4th 708 (Cal. Ct. App. 2003)..............................................................30

*Hood v. BASF Corp.*,
  No. 56863, 2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006).....................................22

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989)....................................................................................31, 37

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
  153 F.3d 1318 (Fed. Cir. 1998)....................................................................................4

*In re Hypodermic Prods. Antitrust Litig.*,
  No. 05–CV–1602, 2007 WL 1959225 (D.N.J. June 29, 2007)..................................10

*IB Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (Cal. Ct. App. 2003).........................................................30, 31

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)............................................................................................ *passim*

*Indep. Voters v. Ill. Commerce Comm'n*,
  510 N.E.2d 850 (Ill. 1987)..........................................................................................31

*Int'l Primate Prot. League v. Inst. for Behavioral Research, Inc.*,
  799 F.2d 934 (4th Cir. 1986)........................................................................................9

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  496 F. Supp. 2d 404 (D. Del. 2007)......................................................................21, 22

*Jewett v. Boihem*,
  23 So. 3d 658 (Ala. 2009)...........................................................................................35

*Jordan v. Alternative Res. Corp.*,
  458 F.3d 332 (4th Cir. 2006) ....................................................................................29

*In re K–Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) .....................................................................10, 34

*In re K-Dur Antitrust Litigation*,
  No. 01-cv-1652, 2007 U.S. Dist. LEXIS 100238 (D.N.J. Mar. 1, 2007) ................8

*Kammer Asphalt Paving Co. v. E. China Twp. Sch.*,
  504 N.W.2d 635 (Mich. 1993).................................................................................38

*Keil v. Scholten*,
  No. 48051-1-I, 2002 WL 988562 (Wash. Ct. App. Feb. 4, 2002) ..........................41

*King Drug Co. of Florence v. Cephalon, Inc.*,
  702 F. Supp. 2d 514 (E.D. Pa. 2010) ......................................................................45

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994).................................................................................................20

*Levine v. First Am. Title Ins. Co.*,
  682 F. Supp. 2d 442 (E.D. Pa. 2010) ...........................................................20, 23, 43

*Levinson v. Mass. Mut. Life Ins. Co.*,
  No. 4:06cv086, 2006 WL 3337419 (E.D. Va. Nov. 9, 2006)..................................43

*Lewis v. Casey*,
  518 U.S. 343 (1996).....................................................................................13, 16, 17

*Lewis v. Lead Industries Ass'n*,
  793 N.E.2d 869 (Ill. App. Ct. 2003) ........................................................................37

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
  751 F. Supp. 2d 183 (D. Me. 2010) ...................................................................31, 43

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  202 F.R.D. 12 (D.D.C. 2001)...................................................................................45

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) ...................................................................................27

*Mack v. Bristol-Meyers Squibb Co.*,
  673 So. 2d 100 (Fla. Ct. App. 1996)........................................................................18

*Malonis v. Harrington*,
  816 N.E.2d 115 (Mass. 2004) ..................................................................................28

*Martis v. Grinnell Mut. Reinsurance Co.*,
   905 N.E.2d 920 (Ill. App. Ct. 2009) ...................................................37

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)...........................................................................4

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,
   72 F. App'x. 916 (4th Cir. 2003) .......................................................39

*Mfrs. Hanover Trust Co. v. Chem. Bank*,
   160 A.D.2d 113 (N.Y. App. Div. 1990) ..............................................39

*Miller v. French*,
   530 U.S. 327 (2000)...........................................................................44

*Minebea Co., Ltd. v. Papst*,
   444 F. Supp. 2d 68 (D.D.C. 2006) ....................................................35

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
   532 S.E.2d 868 (S.C. 2000) ..........................................................40, 41

*N. Hero Marina v. Melanson*,
   No. 607-02, 2004 Vt. Super. LEXIS 82 (Vt. Super. Ct. July 30, 2004) .................................28

*Nacional Financiera, S.A. v. Banco de Ponce*,
   120 N.Y.S.2d 373 (1953)....................................................................29

*New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*,
   No. 262565, 2005 WL 2806234 (Mich. Ct. App. Oct. 27, 2005)............38

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) ...............................................22, 27

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) ........................................9, 10, 11

*Noerr Motor Freight, Inc. v. E. R.R. Presidents Conference*,
   166 F. Supp. 163 (E.D. Pa. 1958), *decree aff'd*, 273 F.2d 218 (3d Cir. 1959),
   *rev'd on other grounds*, 365 U.S. 127 (1961).......................................24

*Norwood v. Raytheon Co.*,
   237 F.R.D. 581 (W.D. Tex. 2006) .....................................................14

*Opp v. Matzke*,
   559 N.W.2d 837 (N.D. 1997) ............................................................39

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................13

*Okoye v. Bank of N.Y. Mellon*,
No. 10-11563-DPW, 2011 WL 3269686 (D. Mass. July 28, 2011) .......................................27

*Overka v. Am. Airlines, Inc.*,
265 F.R.D. 14 (D. Mass. 2010) ...........................................................................................14

*In re Panacryl Sutures Prods. Liab. Cases*,
263 F.R.D. 312 (E.D.N.C. 2009) .........................................................................................14

*People v. Brockman*,
574 N.E.2d 626 (Ill. 1991) ..................................................................................................29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009) ...............................................................................................26

*Piazza v. Ebsco Indus., Inc.*,
273 F.3d 1341 (11th Cir. 2001) ...........................................................................................10

*Piechur v. Redbox Automated Retail, LLC*,
No. 09-cv-984-JPG, 2010 U.S. Dist. LEXIS 16324 (S.D. Ill. Feb. 24, 2010) .........................18

*Pitts v. Jackson Nat'l Life Ins. Co.*,
574 S.E.2d 502 (S.C. Ct. App. 2002) ..............................................................................40, 41

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) ........................................................................... *passim*

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)............................................................................................10, 11

*R & B Elec. Co. v. Amco Constr. Co.*,
471 A.2d 1351 (R.I. 1984) ..................................................................................................40

*Raintree Homes, Inc. v. Vill. of Long Grove*,
807 N.E.2d 439 (Ill. 2004) ..................................................................................................31

*Ransom v. Marrese*,
524 N.E.2d 555 (Ill. 1988) ..................................................................................................18

*Ray Commc'ns., Inc. v. Clear Channel Commc'ns., Inc.*,
673 F.3d 294 (4th Cir. 2012) ................................................................................................3

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-md-2042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)........................................35

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004)......................................................................................12, 25

*Richland Cnty. v. State*,
    180 N.W.2d 649 (N.D. 1970) ............................................................................28

*Rivers v. Amato*,
    No. 00-cv-131, 2001 WL 1736498 (Me. Super., June 22, 2001) ............................38

*Romano v. Motorola, Inc.*,
    No. 07–cv–60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007)..........................36

*Scott v. Mamari Corp.*,
    530 S.E.2d 208 (Ga. Ct. App. 2000)..................................................................36

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
    204 F.3d 1368 (Fed. Cir. 2000)..........................................................................6

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ......................................................................10, 14

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)........................................................................................27

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................................25

*Sherwood v. Microsoft Corp.*,
    No. M2000-01850-COA-R9-CV, 2003 WL 21780975 (Tenn. Ct. App. July
    31, 2003) ......................................................................................................22

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*,
    650 F. Supp. 2d 1213 (S.D. Fla. 2009) ..............................................................36

*Sign-A-Way, Inc. v. Mechtronics Corp.*,
    No. 98-CV-1491, 2000 U.S. App. LEXIS 62301491, 2000 WL 353151 (Fed.
    Cir. Apr. 5, 2000)............................................................................................6

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ..........................................................................................16

*Sobel v. Franks*,
    633 N.E.2d 820 (Ill. App. Ct. 1994) ..................................................................37

*Sosna v. Iowa*,
    419 U.S. 393 (1975)......................................................................................9, 10

*Sperry v. Crompton Corp.*,
    863 N.E.2d 1012 (N.Y. 2007)............................................................................39

*Spires v. Hospital Corp. of America*,
　289 F. App'x 269 (10th Cir. 2008) ...................................................................37

*Stanley v. Cent. Garden & Pet Corp.*,
　891 F. Supp. 2d 757 (D. Md. 2012) .................................................................43

*State v. Am. Tobacco Co.*,
　14 F. Supp. 2d 956 (E.D. Tex. 1997) ..............................................................41

*State v. Int'l Collection Serv., Inc.*
　594 A.2d 426 (Vt. 1991) ..................................................................................28

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
　No. 07-md-01819, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) .....................37

*Steel Co. v. Citizens for a Better Env't*,
　523 U.S. 83 (1998)..............................................................................................9

*Stermer v. SCK Solutions, LLC*,
　No. 08–cv–61751, 2009 WL 1849955 (S.D. Fla. June 26, 2009) ...................36

*Stirman v. Exxon Corp.*,
　280 F.3d 554 (5th Cir. 2002) ...........................................................................14

*Stone v. White*,
　301 U.S. 532 (1937)..........................................................................................28

*Stutzle v. Rhone-Poulenc S.A.*,
　No. 002768, 2003 WL 22250424 (Pa. Com. Pl. Sept. 26, 2003) .....................40

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
　No. 13-MD-2445, 2014 WL 6792663 (E.D. Pa. Dec. 3, 2014)...........21, 30, 38, 42

*Sun Dun, Inc. of Washington v. Coca–Cola Co.*,
　740 F. Supp. 381 (D. Md. 1990) ................................................................21, 41

*Sunbelt Television, Inc. v. Jones Intercable, Inc.*,
　795 F. Supp. 333 (C.D. Cal. 1992) ..................................................................23

*Tarpey v. Crescent Ridge Dairy, Inc.*,
　713 N.E.2d 975 (Mass. App. Ct. 1999) ...........................................................27

*In re Terazosin Hydrochloride Antitrust Litigation*,
　160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................................25

*Terrill v. Electrolux Home Prods., Inc.*,
　753 F. Supp. 2d 1272 (S.D. Ga. 2010)..............................................................36

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ............................... *passim*

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ....................................................................................................25

*Tuvim v. United Jewish Cmtys., Inc.*,
   680 S.E.2d 827 (Ga. 2009).................................................................................................31

*United States v. Texas*,
   507 U.S. 529 (1993)...........................................................................................................43

*Villager Franchise Sys. v. Dhami, Dhami & Virk*,
   No. 046393, 2006 WL 224425 (E.D. Cal. Jan. 26, 2006)..................................................30

*Waldman v. New Chapter Inc.*,
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...............................................................................39

*Walker Process Equip. Inc. v. Food Machinery & Chemical Corp.*,
   382 U.S. 172 (1965)................................................................................................2, 3, 4, 5

*Warth v. Seldin*,
   422 U.S. 490 (1975)...........................................................................................................17

*Watts v. Watts*,
   405 N.W.2d 303 (Wis. 1987)..............................................................................................28

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11–cv–21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ................................28, 35

*Wright v. Cangiano*,
   No. 15084., 1993 WL 946172 (Va. Cir. Ct. July 20, 1993)...............................................33

*Wyeth v. Levine*,
   555 U.S. 555 (2009).............................................................................................................4

*Xerox Corp. v. 3Com Corp.*,
   2004 U.S. Dist. LEXIS 9717 (W.D.N.Y. May 21, 2004) ....................................................3

*York v. Sullivan*,
   338 N.E.2d 341 (Mass. 1975) ............................................................................................27

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969)...........................................................................................................24

## STATUTES

28 U.S.C.A. §§ 1332(d), 1453, 1711-1715 .............................................................................19

740 Ill. Comp. Stat. Ann. 10 ...........................................................................18, 19

Cal. Bus. & Prof. Code § 16720 ...........................................................................23

Cal. Bus. & Prof. Code § 17200 ...........................................................................24

Cal. Bus. & Prof. Code § 17209 ...........................................................................26

Cal. Civ. Code § 1782 ...........................................................................................26

Fla. Stat. § 501.202 ..............................................................................................18

Ill. Legis. Serv. P.A. 81-1051 § 1 .........................................................................19

Ill. Legis. Serv. P.A. 96-751 .................................................................................19

Mass. Gen. Laws Ann. ch. 93A § 9(3)..............................................................26, 27

N.Y. Gen. Bus. Law § 340 ....................................................................................23

N.Y. Gen. Bus. Law § 349 ....................................................................................23

R.I. Gen. Laws § 6-36-7(d) ...................................................................................20

Tenn. Code Ann. § 47-25-101. .............................................................................23

Vt. Stat. Ann. tit. 9, § 2461(b) ..........................................................................27, 28

## OTHER AUTHORITIES

1 William B. Rubeinstein et al., *Newburg on Class Actions* (5th ed. 2011)............10, 14

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1785.1 (3d ed. 2010) ......................................................................................10

Daniel R. Karon, *Undoing The Otherwise Perfect Crime—Applying Unjust
    Enrichment To Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395, 409
    (2005)......................................................................................30, 33, 34

Douglas L. Johnson, Neville L. Johnson, *What Happened to Unjust Enrichment in
    California? The Deterioration of Equity in the California Courts*, 44 Loy.
    L.A. L. Rev. 277, 288 (2010)..............................................................................30

Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev.
    1277, 1287 (1989).............................................................................................45

George P. Roach, *How Restitution and Unjust Enrichment Can Improve Your
    Corporate Claim*, 26 Rev. Litig. 265, 275 (2007) ..................................................32

Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 46:5 (7th ed. 2014) ..................................................................................19, 20

Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) comment *a*......................32

## INTRODUCTION

The Court should deny every aspect of Pfizer's[1] motion to dismiss[2] the End-Payor Plaintiffs' ("EPPs" or "Plaintiffs") Consolidated Amended Complaint ("Complaint" or "CAC").[3]

This case arises under federal and state antitrust and consumer protection laws, as well as state common laws of unjust enrichment, and seeks to hold Pfizer accountable for its strategic manipulation of the patent review and judicial processes. Plaintiffs allege Pfizer unlawfully prolonged its multi-billion dollar monopoly for its drug Celebrex by fraudulently procuring a patent and asserting it in sham litigation, effectively preventing Plaintiffs' access to affordable medication.

When a drug manufacturer such as Pfizer delays the advent of drug price competition, end-payors such as Plaintiffs—consumers, health and welfare funds, and other entities that purchase, pay or reimburse the great majority of the costs of their members' prescription drug purchases—bear the brunt of the anticompetitive scheme. The law has always recognized this fundamental reality. When the Supreme Court limited *federal* antitrust damages recovery to "direct" purchasers in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), a majority of states fought back by enacting "repealer" legislation to make sure *Illinois Brick*'s damage limitations would not apply under their *state* laws and that consumers could be compensated for their antitrust injuries.[4] The Supreme Court protected states' "repealer" response in *California v. ARC America Corp.*, 490 U.S. 93 (1989), when it held that courts must apply repealer state laws

---

[1] Pfizer Inc., G.D. Searle LLC, and Pfizer Asia Pacific Pte. Ltd. are referred to collectively herein as "Pfizer" or "Defendant."

[2] Pfizer's Mem. in Supp. of Mot. to Dismiss End-Payor Pls.' Consolidated Am. Compl. ("Def. Mem."), (Mar. 2, 2015), ECF No. 53.

[3] Consolidated Am. Compl. ("CAC") (Jan. 14, 2015), ECF No. 26.

[4] Other states also have reached the same conclusion by judicial interpretation. Collectively, a majority of states (referred to as "repealer states") have repealed *Illinois Brick* by statute or judicial decision.

consistently with the intentions of state legislatures and courts rather than applying *Illinois Brick* principles to those laws and policies.[5]

Since *ARC America*, defendants have devised creative strategies to read *Illinois Brick*'s limitations back into the law. Pfizer rests much of its pending motion to dismiss on a number of those strategies, arguing that Plaintiffs lack standing to pursue their claims and asserting a string of state-law specific arguments challenging Plaintiffs' ability to assert their claims under state laws. Those ploys cannot succeed—Plaintiffs' standing under state law and the sufficiency of their state law allegations are irreproachable.

## ARGUMENT

## I. EPPS PROPERLY ALLEGE *WALKER PROCESS* FRAUD AND SHAM LITIGATION.

Asserting that EPPs fail to plausibly allege claims for *Walker Process* fraud or sham litigation, Pfizer incorporates by reference the arguments they made against the Direct Purchaser Plaintiffs. Def. Mem. 4-5. Accordingly, EPPs incorporate by reference all facts and arguments made by Direct Purchasers in their Opposition to Pfizer's motion to dismiss.[6]

EPPs also note two indisputable legal realities that underscore the hollowness of Pfizer's arguments. First, the mere fact that the Patent and Trademark Office ("PTO") granted the '048 patent does not diminish the viability of EPPs' *Walker Process* and sham litigation claims. As

---

[5] Although state repealer laws are often referred to as protecting "indirect" purchasers, the laws are not secondary or derivative to federal law or to the rights of "direct" purchasers in the way some mistakenly suggest by the "direct/indirect" terminology. As *ARC America* makes clear, the repealer state laws are distinctly defined and are separately enforceable independent laws that diverge from federal law mainly by seeking to protect those who often bear the brunt of antitrust overcharges, in this case those parties at the end of the chain of distribution. Accordingly, Plaintiffs believe the more accurate appellation to be "End-Payor Plaintiffs" and refer to themselves as such herein, because that is what they are.

[6] Direct Purchasers' Memorandum in Opposition to Pfizer's Motion to Dismiss Plaintiffs' Corrected Consolidated Amended Class Action Complaint, *Am. Sales Co., LLC v. Pfizer, Inc. et al.*, No. 2:14-cv-00361 (E.D. Va. Nov. 12, 2014), ECF No. 51.

the district court stated in *Xerox Corp. v. 3Com Corp.*, 2004 U.S. Dist. LEXIS 9717 at *8 (W.D.N.Y. May 21, 2004),"[t]he mere fact . . . that the PTO has issued a patent, or affirmed a patent's validity on reexamination clearly cannot preclude this court from conducting an examination into the validity of the . . . patent." Indeed, if a patent grant somehow inoculated patentees from *Walker Process* and sham litigation claims, then such claims could not possibly exist, as they depend entirely on the grant of invalid and/or non-infringed patents by the PTO.

Second, the mere fact that the generic manufacturers settled the patent litigation with Pfizer does not, in any way, diminish the viability of EPPs' sham litigation and *Walker Process* claims. Indeed, Federal Rule of Evidence 408 expressly excludes evidence of the acceptance of a settlement "to prove or disprove the validity" of a disputed claim. Fed. R. Evid. 408(a); *see also Ray Commc'ns., Inc. v. Clear Channel Commc'ns., Inc.*, 673 F.3d 294, 306 (4th Cir. 2012). In this particular case, the generic manufacturers likely settled to avoid future litigation costs and the diversion of resources or other business reasons having no bearing at all on the validity of the '048 patent and, in turn, End-Payor Plaintiffs' claims. *See* Fed. R. Evid. 408 Advisory Committee Notes (settlement "may be motivated by a desire for peace rather than from any concession of weakness of position").

## II.     FEDERAL PATENT LAW DOES NOT PREEMPT EPPS' CLAIMS.

Pfizer argues that it "is well-settled black letter law" that the End-Payor Plaintiffs' claims "are preempted." Def. Mem. 5. Yet Pfizer's brief is entirely devoid of any reference to the most recent or relevant on-point case law. As those cases make clear, Pfizer's preemption argument cannot withstand scrutiny.

### A.    Long-Standing Supreme Court Precedent Creates a Presumption Against Preemption in Antitrust Cases.

One of the "cornerstones" of Supreme Court preemption jurisprudence is the presumption against preemption. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). As the Court noted in *ARC America*, 490 U.S. at 101, a party asserting the defense of preemption must "overcome the presumption against finding pre-emption of state law in areas traditionally regulated by the states." The Supreme Court has stated this principle clearly: "we 'start with the assumption that the historic police powers of the States were not to be superseded'" by federal law "'unless that was the clear and manifest purpose of Congress'." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citation omitted). Focusing on antitrust conduct in particular, the Court in *ARC America* held that "[g]iven the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States." 490 U.S. at 101.[7]   Thus, in the present case, which involves state-law antitrust claims, this Court should start with a presumption against preemption. *That* is the "well-settled black letter law" applicable here.

### B.    State-Law Claims Do Not Frustrate the Objectives of Patent Law.

As a practical matter, a finding of preemption would be illogical here. Preemption asks whether a state-law claim should be foreclosed because, if allowed to proceed, it would frustrate the purposes and objectives of a federal law. *See, e.g.*, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989). The Supreme Court held in *Walker Process* that the exact same

---

[7] *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989) (law of unfair competition has "coexisted harmoniously" with federal patent law for almost 200 years); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1334 (Fed. Cir. 1998) (presumption against preemption has "greater force" in cases alleging state unfair competition claims because of the States' long history of providing remedies for monopoly and unfair business practices).

claims brought under identical federal antitrust law *do not* frustrate patent policies. The Court balanced the policies between the antitrust laws and patent laws, setting the standard for *any and all* plaintiffs to establish *Walker Process* liability.[8] Patent law does not preempt federal *Walker Process* claims, so patent law obviously does not preempt state-law *Walker Process* claims that are based on the identical facts and apply the same substantive liability standards as the federal antitrust claims. Patent law's objectives are not affected by who asserts a *Walker Process* claim or the source of law for that claim, so Pfizer cannot establish a conflict between Plaintiffs' claims and federal patent-law objectives.[9] Plaintiffs' claims are not preempted.

### C. Plaintiffs' Claims Are Not Preempted Under the Market Conduct Test.

The applicable test for preemption is not, as Pfizer suggests, whether the Plaintiffs' state law claims involve any allegations of misconduct before the PTO. *See* Def. Mem. 5. Rather, the Federal Circuit has adopted a conduct-based approach for determining whether preemption applies in cases involving both state and patent laws. Under this conduct-based approach, Plaintiffs' state law antitrust claims plainly are not preempted.

In *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998), plaintiffs filed a state law tortious interference claim, alleging that defendant Dow had engaged in bad faith enforcement of a patent by threatening to sue while knowing that the patent was invalid. In ruling that plaintiffs' claims were not preempted, the Court held that a plaintiff may plead both state law and patent law claims when the claims "address entirely different wrongs and also

---

[8] In *Walker Process Equip. Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), the Supreme Court held that federal antitrust claims based on allegations that a patent was obtained by fraud on the PTO, are actionable under the Sherman Act. The Court recognized that "an injured party may attack the misuse of patent rights" and that "the interest in protecting patentees from 'innumerable vexatious suits' [cannot] be used to frustrate the assertion of rights conferred by the antitrust laws." *Id.* at 176.

[9] *See generally Gunn v. Minton*, 133 S. Ct. 1059, 1068 (2013) (holding that state malpractice claims were not preempted by federal patent law).

provide different forms of relief." *Id.* at 1478. The Court found that if a defendant engaged in "bad faith enforcement of a reputedly unenforceable patent" or "[if] a holder of a valid and enforceable patent … knowingly [brought] baseless infringement actions against a competitor' customers," such conduct would be actionable under state law since it would address a different wrong than a claim based solely on inequitable conduct. *See id.* at 1476-78. The difference boiled down to "bad faith misconduct in the marketplace" versus "bad faith misconduct before the PTO." *Id.* at 1477. Misconduct in the marketplace—with which state antitrust laws are concerned—precluded a finding of preemption, even though "the source of proof of bad faith, just one element of the tort, was purported inequitable conduct before the PTO." *Id.* at 1478. Claims alleging *only* misconduct before the PTO—and not in the marketplace—are preempted.[10]

In *In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012), the court applied the market conduct-based test in a pharmaceutical antitrust case factually similar to Plaintiffs' claim here. There, a putative class of indirect purchasers alleged antitrust claims based on *Walker Process*-type fraud and sham litigation. Defendants moved to dismiss on the grounds that patent law preempted plaintiffs' state law claims. The motion was denied. The court held that plaintiffs had plausibly alleged "that [defendant's] 'conduct

---

[10] None of the cases cited by Pfizer reached a contrary result. *See, e.g.*, *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1355 (Fed. Circ. 1991) (finding preemption where plaintiff's abuse of process claim occurred entirely before the PTO); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1381-83 (Fed. Cir. 2000) (finding New Jersey RICO counterclaim preempted where "the wrong alleged and for which state law tort damages [are] sought [is] no more than bad faith misconduct before the PTO") (internal citations and quotations omitted); *Sign-A-Way, Inc. v. Mechtronics Corp.*, No. 98-CV-1491, 2000 U.S. App. LEXIS 62301491, 2000 WL 353151, at *4-5 (Fed. Cir. Apr. 5, 2000) (same); *Cardiovention Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 940 (D. Minn. 2006) (finding preemption on the grounds that plaintiff's claim was "an attempt to remedy conduct before the PTO, rather than marketplace misconduct"); *GFI, Inc. v. Bean Station Furniture*, 286 F. Supp. 2d 663, 667 (M.D.N.C. 2003) (finding claim based on inequitable conduct alone preempted).

amounted to fraud or rendered the patent application process a sham,' which can expose Defendants to antitrust liability even if it might also violate federal patent law." *DDVAP*, 903 F. Supp. 2d at 217-18 (internal citation omitted). The Court explicitly acknowledged that because "Plaintiffs plausibly allege[d] bad-faith enforcement, not just bad behavior before the PTO," the patent laws did "not preempt their state-law claims." *Id.* at 218 (internal citations omitted). The court rejected defendants' claim that plaintiffs had failed to allege marketplace misconduct, finding instead that allegations that defendants misled the PTO, coupled with "bad-faith enforcement through an invalid Orange Book listing, sham patent infringement litigation, and a sham citizen petition" satisfied the marketplace conduct test. *Id.*

As in *DDAVP*, EPPs here allege significant marketplace misconduct as part of the Pfizer's anticompetitive scheme; they do not limit themselves to misconduct before the PTO. Plaintiffs allege that Pfizer knowingly and intentionally obtained the '048 patent by fraud through misleading the PTO and failing to exercise the duty of good faith, improperly listing the '048 patent in the Orange book, engaging in sham litigation against multiple would-be generic manufacturers, and prolonging the impact of its sham litigation through settlement arrangements requiring, by definition, reciprocal and concerted activity with others, that further delayed generic entry. *See* CAC ¶¶ 238-240. As the *DDAVP* court found, these claims involve misconduct in the marketplace and antitrust injury caused by anticompetitive conduct, not merely inequitable conduct before the PTO. To the extent that these claims invoke patent law, it is to demonstrate the marketplace misconduct and violations of state laws. Further, the underlying basis of the alleged injury to purchaser plaintiffs—the unlawful delay of market entry of generic Celebrex—depends entirely upon Pfizer's actions in the marketplace. None of this

conduct is protected, let alone preempted, by federal patent law.[11] Thus, Pfizer's preemption argument should be rejected out of hand.

## III.    EPPS HAVE STANDING TO ASSERT STATE LAW CLAIMS.

Pfizer argues that Plaintiffs have standing to represent purchasers only in states in which they themselves made purchases, but not purchasers in any other states. Def. Mem. 8-11.[12] In other words, while acknowledging Plaintiffs' suffering of injury directly traceable to Pfizer's marketplace conduct, Pfizer asserts a standing requirement exceeding anything required by the Constitution's Article III. Pfizer's position defies a body of law in this Circuit and elsewhere that squarely rejects such an argument because it purposefully confuses Article III standing and Rule 23 class certification requirements. These are two separate legal concepts.

### A.    Plaintiffs Have Article III Standing.

Pfizer repeatedly characterizes Article III standing as a "threshold" inquiry and argues that each "class representative for a class action . . . must itself meet the requirements of Article III standing, and cannot rely on the standing of absent class members." *See, e.g.*, Def. Mem. 9. But each named plaintiff in this action in fact *satisfies* this threshold inquiry. To demonstrate

---

[11] The *DDAVP* court cited and distinguished each of the pharmaceutical antitrust cases that reached a different result, which Pfizer has cited in support of its motion to dismiss. *See DDAVP*, 903 F. Supp. 2d at 216-218 (finding *In re Ciprofloxin Hydrochloride Hydrochloride Antitrust Litigation*, 363 F. Supp. 2d 514 (E.D.N.Y. 2005), *Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 03-cv-0937, 2009 U.S. Dist. LEXIS 42154, at *9 (D.N.J. May 19, 2009), and *In re K-Dur Antitrust Litigation*, No. 01-cv-1652, 2007 U.S. Dist. LEXIS 100238, at *24-25 (D.N.J. Mar. 1, 2007) distinguishable on the grounds that Plaintiffs in each of those cases had failed to allege anything more than inequitable conduct before the PTO. Although Plaintiffs believe each of those cases was wrongly decided, an argument the Court in *DDAVP* acknowledges has "some force," this Court need not reach that result in order to find that Plaintiffs here have plausibly alleged marketplace misconduct sufficient to satisfy the Federal Circuit's preemption test. *See DDAVP*, 903 F. Supp. 2d at 217.

[12] Specifically, Pfizer asserts that Plaintiffs lack standing under the laws of Alabama, Arizona, Florida, Illinois, Indiana, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Texas, and Wisconsin.

Article III standing, a plaintiff need only show that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Int'l Primate Prot. League v. Inst. for Behavioral Research, Inc.*, 799 F.2d 934, 937 (4th Cir. 1986). The Complaint alleges that, as a result of Pfizer's unlawful conduct, each named plaintiff paid more than it otherwise would have in the form of overcharges. *See, e.g.*, CAC ¶¶ 6, 219, 245, 255, 259, 264-65, 272. This is all that is required to establish the named plaintiffs' Article III standing to pursue their own claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998).[13] Pfizer never disputes this; nor can it.

**B. Rule 23 Determines Whether Plaintiffs May Pursue Claims of Absent Class Members in Other States.**

Once a class representative establishes Article III standing to assert his own claim, whether he also may advance claims of absent class members is determined solely under Rule 23's requirements. The Supreme Court said so in *Sosna v. Iowa*, 419 U.S. 393, 403 (1975), pointing out that once the named plaintiff establishes that he or she has suffered an injury that is "'real and immediate,'" not "'conjectural'" or "'hypothetical,'" it "shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class'." (citations omitted).[14] The governing

---

[13] *See also Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) ("it is essential that *named class representatives* demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants] . . . .'") (emphasis added and citation omitted); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 405 (D. Mass. 2013) ("each of the named end-payor plaintiffs has claims against each of the defendants based on their alleged overpayments … [and] have therefore made out their Article III requisite") (citations omitted).

[14] *See also Brady v. Thurston Motor Lines*, 726 F.2d 136, 146 (4th Cir. 1984) ("*After* a class action is certified, the class of unnamed persons acquires a legal status separate from that of the named plaintiffs, and the suit may proceed after the named plaintiffs' claims are no longer

principle is straightforward: "[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class." 1 William B. Rubinstein et al., *Newburg on Class Actions* § 2:6 (5th ed. 2011).[15]

---

justiciable.") (citing *Sosna*, 419 U.S. at 402) (emphasis added); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306-07 (3d Cir. 1998) ("whether an action presents a 'case or controversy' under Article III is determined vis-à-vis the named parties," and "'[o]nce threshold individual standing by the class representatives is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense.'" (citation omitted); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) ("[C]ontrary to the defendants' contentions, the issue here is one of compliance with the provisions of Rule 23, not one of Article III standing. Each of the named plaintiffs has presented claims of injury to himself and has alleged facts which present a case or controversy under the Constitution."), *aff'd* 482 U.S. 656 (1987); *In re Deepwater Horizon*, 739 F.3d 790, 800-01 (5th Cir. 2014) (when a named plaintiff meets individual standing requirements, it is "neither a standing issue nor an Article III case or controversy issue" whether that plaintiff may assert the rights of absent class members, but instead depends on "meeting the prerequisites of Rule 23"); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (district court erred by "conflating" Article III with the question whether plaintiff could pursue claims of absent class members); *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (once plaintiff establishes standing to pursue his own claims, "[w]hether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions"); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (where named plaintiff has standing to assert his own claim, whether he can adequately represent the class is determined solely by Rule 23). District Courts have reached the same conclusion. *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013) ("once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants") (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976)); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *9-12 (E.D. Mich. June 6, 2013); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 214 (S.D.N.Y. 2012); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 406 (S.D.N.Y. 2011); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009); *In re Hypodermic Prods. Antitrust Litig.*, No. 05–CV–1602, 2007 WL 1959225, at *15 (D.N.J. June 29, 2007); *In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002).

[15] *See* 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785.1 (3d ed. 2010) (once named plaintiff establishes his own standing, "whether he will be

Thus, named plaintiffs in a class action need to establish Article III standing to assert their own claims—which they have done here. After that, Rule 23 requires Plaintiffs to demonstrate that they are adequate representatives of the alleged class. To meet this burden, neither Rule 23 nor the cases interpreting it impose a requirement that Plaintiffs' Article III standing must be identical to every other member of the Class. Rule 23 itself implies a lack of identical interests. The core terms of the Rule—"similarity," typicality," "adequacy," "commonality," "predominance," "superiority"—are not absolutes; the notion of one-to-one identity of plaintiffs' Article III standing with the Article III standing of every class member is not within the contemplation of Rule 23.

### C.     It Is Premature to Determine the Adequacy of Named Plaintiffs to Represent Absent Class Members.

Pfizer asserts that the Court should decide the issue of whether Plaintiffs may pursue claims of absent class members from other states on a motion to dismiss, rather than awaiting class certification. It treats the standing question as a timing issue, when it is no issue at all. The overwhelming weight of authority is that once a named plaintiff demonstrates his or her own Article III standing, the standing inquiry is over. The analysis, conducted during the Rule 23 proceedings, turns to whether the plaintiff is an adequate representative of the class. In this regard, the Court should conduct "its determination as to whether the named representatives may pursue claims on behalf of its absent class members under Rule 23 [at] the time it entertains the certification of the putative class." *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013). The court in *Nexium* denied defendants' motion to dismiss and

_____

able to represent the putative class … depends solely on whether he is able to meet the additional criteria encompassed in Rule 23"). "[O]nce the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provision of Rule 23, not one of Article III standing.'" *Prudential*, 148 F.3d at 307 (citing *Goodman*, 777 F.2d at 122).

rejected defendants' identical argument, because it "erroneously conflate[s] the requirements of Article III, for the purposes of assessing constitutional standing of the named plaintiffs, with the procedural requirements of Rule 23, which are designed to determine whether a putative class representative for whom Article III standing has already been established may also raise the claims of the class which it purports to represent." *Id.*

> **D.**    **Under Rule 23, Named Plaintiffs Can Pursue the Claims of Absent Class Members.**

Determining whether named plaintiffs are adequate representatives of absent class members is certainly premature and inappropriate at the motion to dismiss stage. That being said, Plaintiffs here satisfy the adequacy requirement.

For example, in *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004), the court rejected defendant's argument that named plaintiffs from a limited number of states lack standing to represent a class from a broader range of states. *Relafen* at 269. There, as here, end-payor plaintiffs, who resided in California and Massachusetts, asserted that defendants unlawfully delayed the onset of generic competition and sued under the statutes of their home states and multiple others. *Id.* at 263-64. At class certification, defendant argued plaintiffs "lacked standing to assert the claims of, or to serve as adequate representatives for, class members who made their purchases in the remaining states [other than California and Massachusetts]." *Id.* at 267. The court rejected this argument as contrary to law and "the policies served by class action procedure." *Id.* at 269. The *Relafen* court stated that defendant's approach, resurrected by Pfizer here, "would require class counsel to identify representatives from each state involved in a multistate class action, would render class actions considerably more cumbersome to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual rights and in 'achiev[ing] economies of time, effort, and expense.'" *Id.* (citation

omitted) Pfizer's arguments here are even less persuasive in a Rule 12(b)(6) motion to dismiss Plaintiffs' claims at the outset.[16]

### E. Named Plaintiffs Need Not Seek Redress Under the Same State Laws As Absent Class Members.

Pfizer also argues that, under Article III, a named plaintiff must have the *exact same claim*—arising under the *same state law*—as absent class members. Def. Mem. at 8-9. That contention defies the very language of Rule 23(a), which requires that named plaintiff's claim be "typical" of, not identical to, those of the absent class members.

A claim consists of facts and law, and Rule 23's drafters applied the same "typicality" standard to both aspects of a claim. Consequently, the named plaintiff need not invoke the same law as all other class members, but only law that is "typical" of that invoked by absent class members. The Court of Appeals has held that this is a practical, pragmatic inquiry that considers, for example, whether "the elements of plaintiffs' prima facie case" are typical of those of the

---

[16] None of Pfizer's cited cases are to the contrary. Each case cited by Pfizer stands only for the proposition that each named plaintiff must individually meet constitutional standing requirements for the court to exercise jurisdiction over class claims, and that the named plaintiff cannot predicate jurisdiction on absent class members' standing. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citation omitted); *Blum v. Yarestky*, 457 U.S. 991, 1000 (1982) ("federal judicial power is to be exercised . . . only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.") (citation and internal quotation marks omitted); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Thus, it is not a matter of whether Rule 23, as some defendants assert, is being used to "trump" Article III – which, by the way, does not refer to class actions, but individual standing requirements. The issue is whether the Plaintiffs satisfy Article III, and also satisfy Rule 23, a matter to be decided when Plaintiffs move for class certification.

class, such that the facts proving named plaintiffs' claim "would also prove the claims of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).[17]

Where, as here, different state law may govern named plaintiff's and class members' claims, courts conducting the Rule 23 inquiry examine the claim elements under the various state laws to determine whether named plaintiff's claims are indeed typical. Sometimes the answer is yes,[18] and sometimes no.[19] But for present purposes, the key is that the plain language of Rule

---

[17] *See also Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976) ("To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."); *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 38 (E.D. Va. 1981) (typicality standard met "[w]here the class representatives' claims are such that they will have to prove the same elements as the remainder of the class"). In short, the named plaintiffs' and class members' claims need only be "based on the same theory of law." *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312, 322 (E.D.N.C. 2009); *see also* 1 William B. Rubeinstein et al., *Newburg on Class Actions* § 3:29 (5th ed. 2011) (typicality met if claims are "based on the same legal theory"). This is sufficient to ensure that "the interests of the class members will be fairly and adequately protected in their absence." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Circ. 2006).

[18] *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) ("the state-law claims that the Consumer Plaintiffs assert in this case . . . are recognized in some form in all jurisdictions and therefore available for all [class members.]") (citation omitted); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18-19 (D. Mass. 2010) ("Skycaps throughout the country were affected by the implementation of the $2 fee in the same way. The skycap representatives bring claims of tortious interference and unjust enrichment which are typical for all class members. They are recognized in some form in all jurisdictions and therefore available for all skycaps. Thus, the typicality requirement is satisfied."); *Boynton v. Headwaters, Inc.*, 252 F.R.D. 397, 406 (W.D. Tenn. 2008) (typicality standard met because "Plaintiffs have alleged a single course of conduct by Headwaters and Davidson with respect to all members of the putative plaintiff class that is the basis of the class claim's legal theory. As discussed above, the proof of this conduct will be generalized, not individual. Accordingly, the named Plaintiffs' claims are typical of the class members' claims."); *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 588 (W.D. Tex. 2006) ("general causation and general negligence do not depend on the nature of individual class members' claims").

[19] *See, e.g.*, *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (the "critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class," but plaintiffs failed to meet this standard); *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312, 322 (E.D.N.C. 2009) ("class representative may satisfy this requirement by demonstrating that his or her claims arise from the same practices, and are based on the same theory of law, as the class claims," but plaintiffs failed to meet this standard).

23(a)—which applies to both the factual and legal aspects of a claim—requires that the named plaintiff's claims be only typical of, not identical to, those of the class.

Of course, the Court could disregard the plain language of Rule 23(a), which applies the "typicality" standard to both the factual and legal aspects of a claim, if the Rule were unconstitutional. But Pfizer comes nowhere near carrying that heavy burden.[20]

Pfizer's asserted authority supports Plaintiffs' position. For example, Pfizer cites *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006), for the proposition that named plaintiffs must "have standing to bring *each* of the individual state law claims they assert." Def. Mem. 9 (emphasis added). Plaintiffs there argued that their status as municipal taxpayers gave them standing to challenge the state franchise tax credit. *DaimlerChrysler*, 547 U.S. at 349. The Supreme Court disagreed, explaining: "Plaintiffs failed to establish Article III injury with respect to their *state* taxes, and even if they did do so with respect to their *municipal* taxes, that injury does not entitle them to seek a remedy as to the state taxes." *Id.* at 353 (emphasis in original). In other words, if the municipal taxes injured you, challenge those taxes, not the state taxes. Thus, when the Court explained that, "a plaintiff must demonstrate standing for each claim he seeks to press," the Court was referring to each injury experienced *by the plaintiff*. *Id.* at 335. Here, there is only one "claim" of injury—that Pfizer's actions resulted in plaintiffs paying above-competitive prices for celecoxib products. The named plaintiffs have clearly established Article III standing with respect to this claim.

---

[20] *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987) (their stringent review and approval "give the Rules presumptive validity under both the constitutional and statutory constraints"); *Helms v. Richmond-Petersburg Tpk. Auth.*, 52 F.R.D. 530, 531 (E.D. Va. 1971) (party making "constitutional attack" on a Rule "carries a heavy burden").

Similarly, in *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008), the Supreme Court held that a self-financed Congressional candidate had standing to challenge the constitutionality of certain federal election law provisions. The Court was careful to acknowledge, however, that just because the candidate had standing to challenge certain *disclosure requirements* contained in the statute did not mean he necessarily had standing to challenge the *contribution limitations* found in the statute. *Davis* at 733-34. Hence, the Court acknowledged merely that "a plaintiff must demonstrate standing for each claim he seeks to press."[21] *Id.* at 734. Again, there is nothing surprising about this logic, for one can imagine a candidate suffering injury derived only from disclosure requirements and not contribution limitations because these "claims" are factually distinct. The same is not true here. An overcharge paid in Florida is the *same injury* (and thus the same Article III *claim*) as an overcharge paid in Colorado.

Finally, Pfizer cites *Lewis v. Casey*, 518 U.S. 343 (1996), for the proposition that "standing is not dispensed in gross." Def. Mem. 8. EPPs do not dispute (nor violate) this fundamental principle. In *Casey*, an inmate civil rights case, the plaintiff's injury stemmed solely from the dismissal of his legal case resulting from the prison's failure to provide him with special services in light of his illiteracy. Despite the limited injury, the lower court issued a sweeping, system-wide injunction mandating detailed changes across the Arizona prison system. *Id.* at 356-60. The Supreme Court reversed, observing that "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.* at 357 (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20

---

[21] Ultimately, the Court determined that the plaintiff "had the requisite stake in the outcome" and alleged "the requisite injury" required to challenge *both* provisions. *Davis*, 554 U.S. at 734-35.

(1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (internal quotations omitted)). In noting that "standing is not dispensed in gross," the Court simply recognized that "the right to complain of *one* administrative deficiency [did not] automatically confer[] the right to complain of *all* administrative deficiencies." *Casey* at 358 n.6 (emphasis in original). In other words, the named plaintiff did not have standing to obtain a broad injunction to remedy injuries different than those which the named plaintiff complained. *Id*. at 358. By contrast, Plaintiffs here allege Pfizer's conduct caused them to suffer the exact same injury—overcharges for celecoxib—suffered by every putative class member.

Pfizer's proposed constitutional rule, taken to its logical conclusion, would undermine the fundamental purpose of the class device. The complaint here alleges that each member of the putative end-payor class was injured by Pfizer's unlawful scheme to prevent generic entry of celecoxib. There is no practical reason why the class should have to be represented by fifty plaintiffs, one from each state, to prove the same facts and, so far as the record now stands, the same legal elements. If there are any substantial differences in the legal elements under various state laws, the import of those differences can be aired when and where the Federal Rules require them to be aired—on class certification.[22]

## IV.   EPPS STATE VALID ANTITRUST CLAIMS.

### A.   EPPs Have Standing to Assert Antitrust Claims in Florida, Illinois, Utah and Rhode Island.

Pfizer is wrong that EPPs' antitrust claims under the laws of Florida, Illinois, Utah and Rhode Island are barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

---

[22] That a handful of district courts have defied Supreme Court and Circuit Court authority and ruled that named plaintiffs must have the identical standing as all class members with respect to all claims brought under every state's laws is inexplicable. The law of the land is the opposite.

First, well-established law in Florida allows indirect purchasers who have paid supracompetitive prices due to anticompetitive conduct to bring claims. *See* Fla. Stat. § 501.202; *Mack v. Bristol-Meyers Squibb Co.*, 673 So. 2d 100, 109 (Fla. Ct. App. 1996) ("Florida DTPA clearly expresses the legislative policy to authorize consumers (that is, indirect purchasers) to bring actions under the Florida DTPA for price-fixing conduct.").

Second, Pfizer improperly argues that EPPs' Utah claim must be dismissed because Utah permits claims by only citizens or residents of Utah. *See* Def. Mem. 12. EPPs have brought claims under Utah law based only on purchases in Utah by class members who *are* Utah citizens or residents. CAC ¶ 280(w). EPPs' claim is proper under the Utah statute.

Third, Pfizer is incorrect that the Illinois Antitrust Act (the "IAA") allows only the State's Attorney General to bring class actions on behalf of indirect purchasers. Def. Mem. 12. The IAA makes clear that "[n]o provision of th[e] Act shall deny any person who is an indirect purchaser the right to sue for damages." *See* 740 Ill. Comp. Stat. Ann. 10 / 7(2)(West 2010). While the statute provides that "no person shall be authorized to maintain a class action *in any court of this State* for indirect purchasers asserting claims under this Act," *id.* (emphasis added), under a plain reading of that provision, indirect purchaser actions are prohibited from bringing class actions only in Illinois state courts, the courts "*of*" the State of Illinois.[23] Because the statute prohibits only indirect purchaser class claims brought in state courts, those claims remain actionable in federal courts.

---

[23] *See, e.g.*, *Ransom v. Marrese*, 524 N.E.2d 555, 559 (Ill. 1988) ("A court in the State of Illinois . . . is not transformed into a court of the State [] simply because it applies [the] substantive law [of that State] . . . ."); *Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984-JPG, 2010 U.S. Dist. LEXIS 16324, at *10 (S.D. Ill. Feb. 24, 2010) ("while [a federal court] may sit *in* the state of Illinois, [it] is not a court *of* the state of Illinois") (citation omitted).

The legislative history of the IAA also supports the bringing of indirect purchaser class claims in federal courts. The original Act in 1967 allowed only government authorities "standing to sue." 740 Ill. Comp. Stat. Ann. 10 / 7, Bar Committee Notes (1967). In 1979, however, the Act was amended to categorically prohibit the denial of indirect purchaser rights to sue for damages. *See* Ill. Legis. Serv. P.A. 81-1051 § 1, eff. Jan. 1, 1980. In 2009, the Act was amended again to grant the Attorney General *parens patriae* authority to bring suits on behalf of indirect consumers: "The Attorney General *may also* bring an action in the name of this State, as *parens patriae* on behalf of persons residing in this State, to recover the damages under this subsection or any comparable federal law." 2009 Ill. Legis. Serv. P.A. 96-751 (H.B. 2246) § 7, eff. Jan. 1, 2010 (emphasis added). The amended language—"may also"—indicates legislative intent to preserve the separate, broad right granted to indirect purchasers under state law as well as under "any comparable federal law." *Id.* That the statute explicitly points to comparable federal antitrust law is significant given the Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C.A. §§ 1332(d), 1453, 1711-1715, was enacted in between the IAA's 2003 and 2009 amendments.[24] CAFA expanded federal jurisdiction over, *inter alia*, large antitrust class actions, and, coupled with the IAA's prior limiting language of "the courts of this state," a plain reading of the 2009 amended language supports the preservation of indirect purchaser class suits under state and federal law so long as those suits are subject to the jurisdiction of federal courts.[25] Thus, it is clear that EPPs may bring Illinois class claims in federal courts.

---

[24] *Compare* P.A. 93-351, § 5, eff. Jan. 1, 2004 *with* P.A. 96-751, § 5, eff. Jan. 1, 2010.

[25] Principles of statutory construction confirm this reading. A statute should be interpreted as a harmonious whole such that "each part . . . be construed in connection with every other part . . . . Courts presume lawmakers have a definite purpose in every enactment and . . . . [t]hat purpose is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms." 2A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory*

Fourth, Pfizer improperly argues that EPPs lack standing to pursue their Rhode Island state law claims for conduct occurring before the July 15, 2013 enactment of R.I. Gen. Laws § 6-36-7(d). Def. Mem. 12-14. The statute expressly grants indirect purchasers antitrust standing to sue, and remedial statutes may be retroactively applied. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) (noting that "application of new statutes passed after the events in suit is unquestionably proper in many situations"). In *In re Nexium Antitrust Litigation*, the court rejected the same retroactivity argument, holding "the addition of claims under Rhode Island law is permitted due to the similarity of those provisions to federal antitrust law."[26] Notably, Pfizer cites *no* Rhode Island authority to support their assertion that it cannot be applied retroactively. Accordingly, the Rhode Island claims before July 15, 2013 should be upheld. At any rate, Plaintiffs' post-July 15, 2013 damages claims clearly should be sustained.

## B.  EPPs Meet Intrastate Pleading Requirements.

Pfizer argues that EPPs do not meet "intrastate" pleading requirements under Mississippi, New York, Tennessee, and the District of Columbia laws because EPPs' allegations "describe nationwide conduct and injury." Def. Mem. 17-19. This argument fails for three reasons.

*First*, interstate anticompetitive injury is not mutually exclusive of intrastate competitive injury. It is well settled that a complaint alleging a nationwide antitrust or consumer law

---

*Construction* § 46:5 (7th ed. 2014). The Act's categorical statement allowing indirect purchaser actions conflicts with a broad prohibition against bringing such actions in any court, state or federal. Further, rules of statutory construction require that "any doubt about the extent of the proviso's application [be] strictly resolved . . . . and only those subjects expressly exempted should be freed from a statute's operation." *Id*. at § 48:8 (emphasis added).

[26] Order at 3-4, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409 (D. Mass. Oct. 23, 2013), ECF No. 448.

violation may also satisfy "intrastate" pleading requirements.[27] A nationwide violation decreases competition in each state, thereby increasing or artificially stabilizing the price of goods paid by consumers in each state.[28]

*Second*, contrary to Pfizer's assertions, EPPs have alleged substantial intrastate impact. EPPs allege, for example, that "Pfizer's conduct . . . was intended to have a substantial effect on, and did have a substantial effect on . . . the intrastate commerce of each state where purchases of Celebrex were made by class members at supracompetitive prices. Retailers in each state were foreclosed from buying and offering for sale to End Payors cheaper generic Celebrex."[29] In a recent decision involving nearly identical allegations the court found that allegation even "more general than these [would] satisfy the intrastate commerce nexus requirement."[30]

*Finally*, numerous courts have rejected identical arguments raised by Pfizer here as to the five state laws at issue:

- **D.C. Antitrust Act:** Courts agree that plaintiffs sufficiently allege an impact on D.C. consumers "through their allegations that the putative class members were injured by [defendant]'s alleged conduct throughout the United States and in the District of Columbia"[31] by purchasing "products that entered the state and therefore became subject to the antitrust laws of that particular state and the District of Columbia."[32]

---

[27] *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011) (collecting cases).

[28] *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 655–70 (E.D. Mich. 2000); *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997).

[29] CAC ¶ 25; *see also id.* ¶¶ 26, 263.

[30] *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2014 WL 6792663, at *26 (E.D. Pa. Dec. 3, 2014) (refusing to dismiss Mississippi claims) (citing *In re Digital Music*, 812 F. Supp. 2d at 408; *In re Chocolate*, 602 F. Supp. 2d at 580–82).

[31] *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 412 (D. Del. 2007).

[32] *In re Auto. Parts*, 2013 WL 2456612, at *20 (citing *Sun Dun, Inc. of Washington v. Coca–Cola Co.*, 740 F. Supp. 381, 397 (D. Md. 1990)); *see also In re Digital Music*, 812 F. Supp. 2d at 417 (allegations of nationwide conspiracy satisfy D.C.'s intrastate conduct requirement).

- **Mississippi Antitrust Act:** Allegations similar to those asserted by EPPs have been accepted in other cases.[33] Pfizer, like other defendants before it, "misstates the Mississippi Supreme Court's application of the Mississippi Antitrust Act . . . when it states that 'Mississippi's antitrust laws are limited to conspiracies that are accomplished by 'wholly intrastate' transactions.'"[34] In fact, that Court "explained that all monopolies that exist in both interstate and intrastate commerce should be governed by both the federal antitrust act and the state antitrust act."[35] Additionally, contrary to Pfizer's assertions, EEPs specifically allege purchases in Mississippi. *See* CAC ¶ 13.

- **New York Donnelly Act:** EPPs, like end-payor purchasers in other cases, "allege[] a 'significant impact on intrastate commerce' in New York, because the end purchasers presumably purchased [Celebrex] from New York and consumed the product in New York."[36] Pfizer's cited case law is inapposite.[37]

- **Tennessee Trade Practices Act:** Where "retail prices throughout the country (thus including Tennessee) are higher as a result of [defendant's conduct]," courts have held that the Tennessee legislature "'clearly intended that the Act apply . . . even though those goods [purchased by Tennessee consumers] may have arrived in Tennessee through interstate commerce.'"[38] The mere fact that there are allegations that Celebrex "was sold in other states as well as Tennessee … does not mean that [plaintiffs] … are precluded from asserting a claim under Tennessee's antitrust and consumer protection laws."[39]

Accordingly, the allegations in the CAC plainly satisfy the "intrastate" pleading requirements

for the District of Columbia, Mississippi, New York, and Tennessee.

---

[33] *In re Auto. Parts*, 2013 WL 2456612, at *20-21 (similar allegations sufficient to satisfy the intrastate requirements of the Mississippi antitrust laws); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d at 413 (once a foreign good is "incorporated into the general mass of property in [Mississippi] . . . . [it] thereby fall[s] within the compass of the Mississippi antitrust act") (internal citations omitted).

[34] *Hood v. BASF Corp.*, No. 56863, 2006 WL 308378, at *5 (Miss. Ch. Ct. Jan. 17, 2006); *see also California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1158 (N.D. Cal. 2007) ("the Mississippi Antitrust Act should be construed to require allegations of *at least some* activity or conduct occurring in intrastate commerce") (emphasis added).

[35] *Hood,* 2006 WL 308378, at *5.

[36] *In re Digital Music*, 812 F. Supp. 2d at 417 (allegations of nationwide conspiracy satisfy New York intrastate conduct requirements).

[37] *See In re Auto. Parts*, 29 F. Supp. 3d 982, 1006 (E.D. Mich. 2014) (distinguishing *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005), because plaintiffs there "included *no allegations* of intrastate conduct").

[38] *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 173 (D. Me. 2004) (citing *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at *16 (Tenn. Ct. App. July 31, 2003).

[39] *In re Cardizem*, 105 F. Supp. 2d at 667-68.

### C. EPPs State Valid Claims Under California, New York, and Tennessee Statutes

EPPs' claims under Tenn. Code Ann. § 47-25-101 *et seq.*, N.Y. Gen. Bus. Law § 340 *et seq.*,[40] and Cal. Bus. & Prof. Code § 16720 *et seq.*[41] are proper. Despite Pfizer's assertions, EPPs in fact allege "reciprocal and concerted activity" in their complaint. CAC ¶ 279.d.; *see also* CAC ¶¶ 273.e & f.

### D. Plaintiffs Plead a Cognizable Future Injury.

Pfizer's baseless argument opposing EPPs' claim for injunctive relief should be rejected for two reasons.

*First*, EPPs do in fact allege ongoing harm. Specifically, EPPs allege that Pfizer's unlawful activities "delayed entry of celecoxib and *will continue to cause overcharges **until*** prices have dropped to their competitive level such that prices in the actual world and 'but for' world are the same."[42] These well-pled allegations are clearly plausible and cannot be ignored.

*Second*, courts are free to fashion injunctive relief to prevent *similar* violations from recurring in the future. Courts should restrain "acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the

---

[40] EPPs will seek to amend their complaint to assert an additional monopolization claim under N.Y. Gen. Bus. Law § 349. *See e.g., Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 148 (N.Y. App. Div. 2004) ("A cause of action under General Business Law § 349 is stated by plaintiffs' allegations that [defendant] engaged in purposeful, deceptive monopolistic business practices . . . .").

[41] Additionally, EPPs are entitled to pursue their California claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., as currently pled (CAC ¶ 280.b) which permits unfair competition claims based on monopolization. *See, e.g., Sunbelt Television, Inc. v. Jones Intercable, Inc*., 795 F. Supp. 333, 338 (C.D. Cal. 1992).

[42] CAC ¶ 245 (emphasis added); *see also id.* ¶ 249 ("Pfizer's anticompetitive conduct … has caused *and will cause* Plaintiffs and the Class to pay more than they would have paid for celecoxib capsules.") (emphasis added); *id*. ¶ 262 ("Defendants' activities . . . have affected (*and will continue to substantially effect*), interstate commerce.") (emphasis added); *id.* ¶ 272 ("from January 1999 until December 2014, and *with effects that will continue*, Pfizer possessed monopoly power in the market for celecoxib capsules") (emphasis added).

future . . . may fairly be anticipated from the defendant's conduct in the past."[43] Accordingly, EPPs' claim to injunctive relief survives.[44]

## V.   EPPS STATE VALID CONSUMER PROTECTION CLAIMS.

### A.   California

*Deception directed towards consumers*. Pfizer argues that EPPs' California Unfair Competition Law ("CUCL") should be dismissed because EPPs allegedly (1) fail to allege "deceptive conduct," and (2) fail to allege that the deceptive conduct was "directed towards consumers and relied upon by consumers." Def. Mem. 21. Both arguments should be rejected.

The plain language of the CUCL undermines Pfizer's argument. "Unfair competition" is defined as "any unlawful, unfair or fraudulent business act or practice . . . ."[45] As recognized by the California Supreme Court, the statute is "written in the disjunctive" and "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."[46]

Pfizer cites one California Supreme Court decision that deals exclusively with the fraud prong of the statute, and more specifically, actions "based on a fraud theory involving false

---

[43] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969) (internal quotations omitted); *see also In re New Motor Vehicles*, 522 F.3d at 13 (plaintiffs are entitled to injunction to prohibit "a contemporary violation likely to continue or recur") (emphasis added); *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 222 (S.D.N.Y. 2002) (court should enjoin future violations so defendants are not "'free to return to' (their) old ways") (citing *Allee v. Medrano*, 416 U.S. 802, 811 (1974)); *Noerr Motor Freight, Inc. v. E. R.R. Presidents Conference*, 166 F. Supp. 163, 168 (E.D. Pa. 1958) ("It is the duty of the Court to frame a decree which will suppress the unlawful practices found to exist and to take such reasonable measures as will preclude their revival. The injunctive relief in this case will, therefore, be designed to restrict the unlawful practices found to exist heretofore and to prevent future repetition of like nature."), *decree aff'd*, 273 F.2d 218 (3d Cir. 1959), *rev'd on other grounds*, 365 U.S. 127 (1961) (internal citations omitted).

[44] *See* CAC ¶ 296 (seeking injunctive relief, in part, to "assure that *similar* anticompetitive conduct does not reoccur in the future") (emphasis added).

[45] Cal. Bus. & Prof. Code § 17200.

[46] *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999).

advertising and misrepresentations to consumers."[47] But that Court expressly cautioned, "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." *Id*. Here, Pfizer simply has not demonstrated that the "deception" and "reliance" elements are applicable.[48] Indeed, courts have recognized that the very types of claims at issue here are actionable under the CUCL, without a showing of deception towards or reliance by consumers. For example, the end-payors in *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1378 (S.D. Fla. 2001), alleged that the defendant monopolized the market for a drug, violating the CUCL "by submitting false patent information to the [FDA] and pursuing baseless patent infringement suits against potential generic competitors." The court, in denying the defendant's motion to dismiss, held:

> California's Unfair Competition Law proscribes "unfair competition" in all of its forms, including "any unlawful, unfair or fraudulent business act or practice." The state Supreme Court has repeatedly described this statute as "sweeping" in scope. This law "governs anti-competitive business practices as well as injuries to consumers," and the Court can find no authority for the proposition that unilateral monopolization of the market for a prescription drug would not offend its provisions.
> *Id*. at 1379 (internal citations omitted). Thus, without a doubt, antitrust violations can

constitute "unfair competition" under the CUCL. *See id*. Accordingly, EPPs' CUCL claim should be allowed.[49]

*Pre-filing notice*. Pfizer quotes part of the CUCL that requires parties to "serve, within three days of filing with the court, a copy of that brief or petition on the Attorney General," (Def.

---

[47] *In re Tobacco II Cases*, 207 P.3d 20, 39 n.17 (Cal. 2009).

[48]   *See, e.g., In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 895 (E.D. Pa. 2012) (holding plaintiffs need not plead "such additional elements for a [C]UCL claim arising from an alleged antitrust violation.").

[49] *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F. Supp. 2d 380, 406 (E.D. Pa. 2010) (act of "filing sham lawsuits designed to prevent the entry of generic alternatives," "falls under the broad scope of the CUCL"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 283 (D. Mass. 2004) (same).

Mem. 21) but omits language that states such a requirement applies only to *state* court proceedings.[50] Notably, Pfizer cites no cases dismissing a claim pursuant to Section 17209.[51]

## B. Massachusetts

*Intrastate Pleading Requirements.* Pfizer's argument fails as it did in a similar case where the defendant "argue[d] that the plaintiffs may not avail themselves of § 11 because [defendant]'s conduct did not occur 'primarily and substantially within' Massachusetts."[52] As the First Circuit held, the defendant's "conduct directly, and by design, . . . caused financial injury to payors in Massachusetts."[53] Massachusetts courts have also held that where anticompetitive effects reach into the "intrastate" commerce of Massachusetts, indirect purchaser claims may be upheld.[54] Accordingly, EPPs' claims here should proceed.

*Pre-filing notice.* The pre-filing notice requirement under Mass. Gen. Laws Ann. ch. 93A § 9(3) does "not apply . . . if the prospective respondent does not maintain a place of business or

---

[50] *See* Cal. Bus. & Prof. Code § 17209 (limiting the requirement to "any proceeding in the *Supreme Court of California*, a *state court of appeal*, or the *appellate division* of a superior court") (emphasis added); *Californians for Population Stabilization v. Hewlett-Packard Co.*, 58 Cal. App. 4th 273, 285, 67 Cal. Rptr. 2d 621, 628 (Cal. Ct. App. 1997), *abrogated on other grounds by Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 999 P.2d 706 (Cal. 2000) ("the purpose of the statute is to inform the Attorney General and the local district attorney of issues to be raised on appeal").

[51] The only case cited by Pfizer, *In re Ford Tailgate Litigation*, No. 11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014), deals solely with pre-notice requirements under Cal. Civ. Code § 1782 for statutory fraud claims, *id.* at *9, and is not limited, like notice under § 17209 of the CUCL, to proceedings in California state courts.

[52] *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009) (internal citation omitted).

[53] *Id.* Moreover, as further recognized, "the purpose of Chapter 93A to 'encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices' is undoubtedly consistent with allowing a § 11 claim under the circumstances." *Id.*; *see also In re Auto. Parts*, 29 F. Supp. 3d at 1010-11 (similar allegations sufficient to satisfy intrastate requirements of Massachusetts consumer protection statute).

[54] *See, e.g., Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 313 (Mass. 2002) (affirming right to bring indirect purchaser claims under Mass. G.L. 93A where conduct largely occurred out of state because the foreign defendants "are manufacturing and distributing vitamin products that are intended for use by persons exactly like the plaintiff, the ultimate consumer").

does not keep assets within the commonwealth ….”[55] Here, pre-suit notification is not applicable because EPPs do not allege that Pfizer, as the “prospective respondent,” maintains places of business or keeps assets within Massachusetts.[56]

### C.    Vermont

Pfizer asserts that EPPs are not “consumers who contract[] for goods or services” and therefore cannot bring a claim under the Vermont Consumer Fraud Act (“VCFA”). Pfizer simply misreads the Vermont statute. The VCFA is *not* limited to only a consumer who “contracts for goods or services.” Rather, the statute expressly provides a remedy to any consumer who “sustains damages or injury.” Vt. Stat. Ann. tit. 9, § 2461(b). Indeed, Pfizer’s argument that third-party payors have no right of action under the VCFA is contrary to controlling law.[57]

The VCFA prohibits “[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce ….” *Id.* at § 2453(a). This remedial statute must be construed liberally to accomplish its purpose of encouraging fair and honest competition. *Elkins,*

---

[55] Mass. Gen. Laws ch. 93A § 9(3)*; see also Okoye v. Bank of N.Y. Mellon*, No. 10-11563-DPW, 2011 WL 3269686, at *4 (D. Mass. July 28, 2011).

[56] *See In re Processed Egg*, 851 F. Supp. 2d at 903 (“pre-suit notification is not required” where “prospective respondents” do not maintain business in Massachusetts); *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 233 (M.D. Pa. 2010). Moreover, state notice requirements are procedural and thus inapplicable to cases brought in federal court. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997). Defendants have not offered any analysis to show otherwise under *Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, 559 U.S. 393 (2010) (holding that, in diversity actions, Rule 23 of the Federal Rules of Civil Procedure preempts state rules restricting class actions). In the event that this Court should find notice is required to proceed under Massachusetts law, courts uniformly grant leeway to cure any defect in such notice by amending the operative pleading. *Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94, 96-97 (D. Mass. 2006); *Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E.2d 975, 983 (Mass. App. Ct. 1999). Any dismissal for failure to serve the pre-filing notice should not be on the merits or with prejudice, so plaintiff can amend or re-file 30 days after compliance. *York v. Sullivan*, 338 N.E.2d 341, 346-47 (Mass. 1975).

[57] *See Elkins v. Microsoft Corp.*, 817 A.2d 9, 20 (Vt. 2002) (permitting indirect purchaser to allege violation of the VCFA based on injury from monopoly power); *see also In re New Motor Vehicles*, 350 F. Supp. 2d at 206 (allowing indirect purchaser claim under VCFA, and noting that “[t]he VCFA does not require that a defendant have directly engaged in trade with consumers.”).

817 A.2d at 13. "The VCFA affords 'any consumer' who has been harmed by" such methods or acts "a right to sue for damages or equitable relief."[58] EPPs allege Pfizer caused Vermont Celebrex consumers to pay supracompetitive prices, and thus have standing under the VCFA.[59]

## VI. EPPS STATE CLAIMS FOR UNJUST ENRICHMENT UNDER COMMON LAW.

EPPs' second claim for relief is for unjust enrichment under the common laws of the District of Columbia, Puerto Rico, and all states except Indiana and Ohio. CAC ¶ 284. Derived from the concepts of fairness, equity and good conscience, a claim for unjust enrichment requires that a defendant who receives a benefit from another under inequitable circumstances has a duty to disgorge the wrongful gain.[60] Pfizer tries to neuter this paramount legal principle, arguing that EPPs' status as indirect purchasers disqualifies them from pursuing unjust enrichment claims. The common law claim "to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles," is not undermined so facilely.[61]

---

[58] *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012) (quoting Vt. Stat. Ann. tit. 9, § 2461(b)).

[59] Pfizer's reliance on *State v. International Collection Service, Inc.* 594 A.2d 426 (Vt. 1991) is misplaced. That case was abrogated by a subsequent statutory amendment. *N. Hero Marina v. Melanson*, No. 607-02, 2004 Vt. Super. LEXIS 82, at *6-7 (Vt. Super. Ct. July 30, 2004) (1997 amendment intended to expressly create a private cause of action for businesses).

[60] *See, e.g.*, *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987) ("an action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust"); *Malonis v. Harrington*, 816 N.E.2d 115, 120 (Mass. 2004) ("The underlying basis for this legal obligation is derived from principles of equity and fairness, to prevent unjust enrichment of one party . . . at the expense of another . . . ."); *Richland Cnty. v. State*, 180 N.W.2d 649, 655 (N.D. 1970) ("The doctrine of unjust enrichment is based upon fairness and justice.").

[61] *Stone v. White*, 301 U.S. 532, 534 (1937); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011) ("[B]y their very nature unjust enrichment claims are ill-suited for bright-line rules of the type defendants suggest."); *Williams v. Wells Fargo Bank, N.A.*, No. 11–cv–21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being

**A.      EPPs Adequately Plead Claims for Unjust Enrichment in the District of Columbia, Puerto Rico, and All States Except Indiana and Ohio.**

Plaintiffs allege that they were coerced to continue paying for Pfizer's overpriced Celebrex because Pfizer fraudulently procured its patent and engaged in sham litigation, effectively preventing Plaintiffs' access to affordable medication from generic manufacturers. Plaintiffs allege Pfizer's conduct was both unlawful and inequitable, and it would be "inequitable for Pfizer to be permitted to retain any of the overcharges." CAC ¶¶ 283-292. As a remedy for Pfizer's unjust enrichment, Plaintiffs seek to disgorge "all unlawful or inequitable proceeds received by Pfizer," and to the extent the "Court finds that Plaintiffs and the Class members have no adequate remedy at law, a constructive trust should be imposed . . . ." *Id.*

Pfizer makes several attempts to argue that Plaintiffs have not adequately pled the elements for unjust enrichment. None of these arguments holds weight.

**1.      Plaintiffs Plead Facts From Which the Court Can Infer All the Elements of Unjust Enrichment for Each Jurisdiction.**

Contrary to Pfizer's claim, there is no requirement that each element of each jurisdiction's cause of action be specifically "parsed out." (Def. Mem. 26-27).  Plaintiffs need only allege facts to "allow the Court to *infer* that all elements of each of his causes of action exist." *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 756 (W.D. Va. 2007) (quoting *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006)) (emphasis added). The Court can easily make that inference here.

Although there may be slight variations in how a particular state has pronounced its elements, "the common denominator is the shared principle that it is unjust for a defendant who

_____

conferred on a defendant."); *Nacional Financiera, S.A. v. Banco de Ponce*, 120 N.Y.S.2d 373, 414 (1953) ("[T]he action for money had and received is of necessity flexible[.]"); *People v. Brockman*, 574 N.E.2d 626, 635 (Ill. 1991).

is enriched at the expense of the plaintiff to accept and retain the ill-gotten benefit."[62] Thus, EPPs' extensive allegations that Pfizer obtained ill-gotten gains at EPPs' expense permit the Court to infer all the elements for each jurisdiction. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-md-2445, 2014 WL 6792663, at *30 (E.D. Pa. Dec. 3, 2014) (no need to plead elements for each state given allegations of ill-gotten gains at plaintiffs' expense); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) (same).

To the extent Pfizer argues a particular state (1) does not recognize a claim for unjust enrichment, (2) requires an additional claim be asserted, or (3) requires additional elements of privity or a "direct benefit," EPPs reject these contentions in turn.

### 2. California, Georgia, Illinois, and Mississippi All Recognize a Cause of Action for Unjust Enrichment.

**California.** The California Supreme Court specifically held that a plaintiff was "entitled to seek relief under traditional equitable principles of unjust enrichment" notwithstanding the plaintiff's inability to obtain relief pursuant to other statutes. *Ghirardo v. Antonioli*, 924 P.2d 996, 1002, 1005 (Cal. 1996). Arguing California does not recognize a claim for unjust enrichment, Pfizer relies on no state Supreme Court case; instead, it relies on one wrongly decided appellate court decision (or its limited progeny) that confuses the term "restitution." *IB Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003). Nevertheless, California courts frequently bypass *IB Melchior* and follow *Ghirardo*.[63]

---

[62] *In re Processed Egg*, 851 F. Supp. 2d at 912; Daniel R. Karon, *Undoing The Otherwise Perfect Crime—Applying Unjust Enrichment To Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395, 409 (2005) ("all states' unjust-enrichment laws contain virtually identical elements").

[63] *Villager Franchise Sys. v. Dhami, Dhami & Virk*, No. 046393, 2006 WL 224425, at *7 (E.D. Cal. Jan. 26, 2006) ("California law recognizes a cause of action for unjust enrichment[.]") (citing *Ghirardo*, 924 P.2d 996); *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708 (Cal. Ct. App. 2003) (applying *Ghirardo* post-*IB Melchior*; reversing dismissal of independent claim for unjust enrichment); *In re Processed Egg*, 851 F. Supp. 2d at 913; Douglas L. Johnson, Neville L.

**Georgia.** Georgia law plainly provides a claim for unjust enrichment. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176-77 (2d Cir. 2012) (recognizing claim for unjust enrichment under Georgia law, requiring that the plaintiff show the defendant obtained a benefit at his expense and that equity and good conscience require defendant to return it to the plaintiff); *see also Tuvim v. United Jewish Cmtys., Inc.*, 680 S.E.2d 827, 829-30 (Ga. 2009).

**Illinois.** The Illinois Supreme Court has repeatedly sustained unjust enrichment claims not founded on separate underlying claims. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."); *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004); *Indep. Voters v. Ill. Commerce Comm'n*, 510 N.E.2d 850 (Ill. 1987); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) ("The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action.").

**Mississippi.** Mississippi law plainly provides a claim for unjust enrichment. *See In re Processed Egg*, 851 F. Supp. 2d at 913 ("[W]ith respect to Mississippi, there is considerable authority that supports the existence of an independent state law claim for unjust enrichment."); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 196 (D. Me. 2010) ("[U]njust enrichment is a separate cause of action under Mississippi state law.").

---

Johnson, *What Happened to Unjust Enrichment in California? The Deterioration of Equity in the California Courts*, 44 Loy. L.A. L. Rev. 277, 288 (2010) (*Melchior* should be ignored because it "failed to discuss *Ghirardo*" and "other [California courts] have reached contrary results").

**3.      Plaintiffs Plead an Equitable Basis to Recover for Unjust Enrichment.**

Pfizer also incorrectly argues that Plaintiffs' claims for unjust enrichment are unsustainable in states where no *other claims* under the state's law are asserted. Incredibly, Pfizer argues that this is proof that EPPs "claim *no wrongful conduct* in those states to form the basis of an unjust enrichment claim." Def. Mem. 24-25 (emphasis added). Pfizer simply doesn't get it. "[U]njust enrichment [is] an independent basis of liability in common-law legal systems[.]"[64] The lack of a statutory basis to bring other claims in a particular state does not equate to Plaintiffs' having failed to allege any wrongful conduct under common law.

The wrongful conduct alleged is a violation of *equitable principles*. *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 669 (rejecting similar argument by defendants and noting that it "confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws"); *D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006) ("equitable remedies for unjust enrichment claims are often awarded when state statutory claims prove unsuccessful"). "Rather than allegations and proof of the elements necessary for its antitrust claims, Plaintiffs' common law claims for unjust enrichment depend upon allegations and proof that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cardizem*, 105 F. Supp. 2d at 669 (citing state laws) (internal quotations omitted).

---

[64] Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) comment *a.*; George P. Roach, *How Restitution and Unjust Enrichment Can Improve Your Corporate Claim*, 26 Rev. Litig. 265, 275 (2007) ("[A]ll major authorities . . . affirm that unjust enrichment can be an independent cause of action.") (citing 1 Dan B. Dobbs, Law of Remedies § 4.1(2), at 557 (2d ed. 1993) (stating that unjust enrichment may be its own cause of action)).

Similar to the *Cardizem* plaintiffs, EPPs' allegations that Pfizer's anticompetitive, fraudulent, and unconscionable conduct is both unlawful and inequitable, and that it would be "inequitable for Pfizer to be permitted to retain any of the overcharges," suffice to establish "wrongful conduct." CAC ¶¶ 283-292. And the lack of a damages remedy in a particular state is precisely what allows—not prevents—the equitable relief of disgorgement.[65] Thus, "in states whose courts either don't permit statutory claims for consumer [antitrust violations] or haven't yet adjudicated the issue—unjust enrichment becomes consumers' proper (and sometimes sole) remedy against [monopolists]." Karon, *Perfect Crime*, 108 W. Va. L. Rev. at 429.

Pfizer fails to cite any case support from any one of the twenty-four jurisdictions under which it seeks to dismiss unjust enrichment claims on grounds that they cannot be maintained as independent causes of action premised on equitable principles. Its argument fails for this reason alone. As Plaintiffs already set forth above, each of the twenty-four jurisdictions establishes that unjust enrichment claims may be independently asserted on an *equitable* basis. *Cardizem*, 105 F. Supp. 2d at 669 (citing laws of states).

**4.  Unjust Enrichment Claims Do Not Require Additional Elements of Privity or a Direct Benefit.**

At the outset, Pfizer argues that *all* unjust enrichment claims should be dismissed because this case "comes nowhere close to the type of quasi-contract circumstances contemplated by unjust enrichment." Def. Mem. 27-28. Pfizer improperly infers from courts' infrequent allusion to unjust enrichment as "quasi contract" that such claims are available only to plaintiffs in direct "quasi-transactional relationships" with defendants. Def. Mem. 27. That is nonsense.

---

[65] *Wright v. Cangiano*, No. 15084., 1993 WL 946172, at *1 (Va. Cir. Ct. July 20, 1993) ("The 'unjust' in 'unjust enrichment' refers to the lack of the plaintiff having a remedy at law for any wrong perpetrated on him by the defendant.").

Pfizer offers no support to suggest that equitable claims from any jurisdiction (let alone *all* of them) do not encompass ill-gotten gains through anticompetitive and unconscionable conduct.[66] On the contrary, "[u]njust enrichment is an equitable remedy, and thus by its very nature is a flexible doctrine" that is not restricted to a particular set of circumstances.[67] "Rather than looking at the relationship between the parties, courts typically focus on the relation between the plaintiffs' injury and the defendants' conduct."[68] Here, EPPs plead that their injury is directly tied to Pfizer's alleged unlawful and inequitable conduct. *See* CAC ¶¶ 255-264. This direct line between Pfizer's wrongful acts and the effects suffered by Plaintiffs has long been recognized as sufficient.[69] That EPPs' overcharges were channeled through an intermediary is thus immaterial. *See, e.g.*, *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Defendants' . . . argument that an unjust enrichment claim requires an allegation that Plaintiffs dealt directly with Defendants, is . . . without merit").

Based on similar faulty reasoning, Pfizer next seeks dismissal under 25 jurisdictions, 5 of which it claims require an element of "privity," and 24 of which it claims require a plaintiff directly provide a benefit to defendant. Def. Mem. 28-34. These arguments too have been made and rejected, with courts refusing to engraft such bright-line requirements onto equitable claims

---

[66] *But cf. In re Chocolate*, 749 F. Supp. 2d at n.9-16 (finding no state's law for equitable claims are strictly limited exclusively to the narrow quasi-contractual circumstances that defendants suggest); *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40–41 (N.Y. App. Div. 2004) (permitting indirect purchasers of software products to pursue unjust enrichment claims to recoup overcharges from manufacturer); Karon, *Perfect Crime*, 108 W. Va. L. Rev. at 428 (end-payor's "benefit" conferred as a result of anticompetitive conduct is precisely "the kind of benefit unjust enrichment is intended to address").

[67] *In re Flat Panel*, 2011 WL 4501223, at *7.

[68] *Id.* (analyzing states' laws); *In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2014 WL 4793850, at *21 (E.D. Mich. Sept. 25, 2014) (citing states' laws; holding the "critical inquiry" is "the relationship between his detriment and the defendant's benefit flow from the challenged conduct.") (internal quotations and citation omitted).

[69] *See Desiano v. Warner-Lambert Co*., 326 F.3d 339, 349-50 (2d Cir. 2003).

absent any state law authority explicitly holding such requirements are *necessary*.[70]  Plaintiffs

expose below Pfizer's lack of such authority from each of the 25 jurisdictions.

**Alabama.** *Jewett v. Boihem*, 23 So. 3d 658, 662 (Ala. 2009) ("[i]t is not necessary . . .to

prove that money belonging to the plaintiff was actually and physically given to, and received by

the defendant, as it is sufficient to show . . . defendant has received the benefit *indirectly*").[71]

**Arizona.** *Brown v. Pinnacle Restoration LLC*, 12-cv-0550, 2013 WL 3148654, at *2

(Ariz. Ct. App. June 18, 2013) (allowing claim despite benefit flowing through "middleman").[72]

**District of Columbia.** *In re Flat Panel*, 2011 WL 4501223, at *12 (holding under D.C.

law there need not be a direct benefit; denying motion to dismiss indirect purchaser unjust

enrichment claims and distinguishing *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 186

(D.D.C. 2006), on which Pfizer relies, as irrelevant to the issue).[73]

**Florida.** *In re Processed Egg*, 851 F. Supp. 2d at 929 ("Florida law does not appear to

require the conferral of a direct benefit exclusively"); *Williams*, 2011 WL 4901346, at *5 ("It

---

[70] *In re Processed Egg*, 851 F. Supp. 2d at 914, 928 (state laws must "*necessarily* require as a matter of law [that] Plaintiffs [must] prove . . . they directly conferred a benefit on Defendants"; finding none do) (internal quotations omitted); *In re Flat Panel*, 2011 WL 4501223, at *8 (court will not apply a direct benefit rule "[u]nless a state court has explicitly held otherwise").

[71] Pfizer cites one non-controlling case, *Danny Lynn Electrical & Plumbing, LLC v. Veolia ES Solid Waste Southeast, Inc.*, No. 09-cv-192, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011) that merely held, in contrast to the case here, that a "direct line" could not be "established between the money paid by the plaintiffs and the compensation received . . . ."

[72] Pfizer cites only one non-controlling and poorly reasoned case, *In re Refrigerant Compressors Antitrust Litigation*, No. 2:09-md-2042, 2013 WL 1431756, at *25-26 (E.D. Mich. Apr. 9, 2013), which did not even cite law from Arizona.

[73] Pfizer also only relies on *Refrigerant Compressors*, 2013 WL 1431756, at *25-26, which cited no law from the District of Columbia.

would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary . . . .").[74]

**Georgia.** Neither of Pfizer's cases supports the rule that Georgia requires a direct benefit; both cases simply found there was no traceable benefit conferred between the plaintiff and defendant. *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000); *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007). Without a "direct benefit" element articulated anywhere in the case law, EPPs submit it improper for the Court to engraft one onto Georgia law. *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010) (declining to dismiss unjust enrichment claim on basis that plaintiff conferred indirect benefit on defendant, finding that nothing under Georgia law restricts claims to direct benefits).

**Idaho.** Idaho requires neither a "cognizable legal relationship" between the parties (Def. Mem. 29), nor a "direct benefit" (Def. Mem. 32). *Hausam v. Schnabl*, 887 P.2d 1076 (Idaho 1994) (allowing claim despite no cognizable legal relationship between defendant and plaintiff creditor who conferred indirect benefit through loan to third party); *see Ellmaker v. Tabor*, ___P.3d___, 2015 WL 797642, at *10 (Idaho Feb. 26, 2015) (stating elements).[75]

**Illinois.** Conceding the State does not follow a direct benefit rule, Pfizer argues only that Illinois law requires a fiduciary duty or privity between parties to state an unjust enrichment

---

[74] *See also Romano v. Motorola, Inc.*, No. 07–cv–60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007); *Stermer v. SCK Solutions, LLC*, No. 08–cv–61751, 2009 WL 1849955, at *6 (S.D. Fla. June 26, 2009); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009).

[75] Pfizer misstates the law of Idaho. The existence of a relationship between the parties can be a factor—but not a requirement.  And in both cases cited by Pfizer, (Def. Mem. 29), the courts merely held there was no benefit conferred. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91 (Idaho 2005) (insureds did not confer any benefit to the State when the insurance provider lawfully used its own money to buy property in State); *Beco Constr. Co. v. Bannock Paving Co.*, 797 P.2d 863, 866 (Idaho 1990) (no benefit "directly or indirectly").

claim. Not true. *Sobel v. Franks*, 633 N.E.2d 820, 829 (Ill. App. Ct. 1994) ("[T]here is no duty or privity requirement when bringing a claim for unjust enrichment."); *see also HPI*, 545 N.E.2d at 679.[76]

**Kansas.** Pfizer argues that Kansas requires privity or "special circumstances . . . such as misconduct perpetrated directly by the defendant against the plaintiff" (Def. Mem. 29-30), and a direct benefit conferred on defendant (Def. Mem. 32). The former requirement applies only where an unpaid subcontractor asserts unjust enrichment claims against an owner. *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 840 (Kan. 1996).[77] Absent that unique circumstance, "[a] claim for unjust enrichment under Kansas law . . . does not depend on privity." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007). As to the latter alleged requirement, under Kansas law, "a benefit may be conferred indirectly." *Id.*; *In re Flat Panel*, 2011 WL 4501223, at *12 (allowing Kansas unjust enrichment claim and finding courts "explicitly endorsed indirect-purchaser unjust enrichment claims under Kansas law.").[78]

---

[76] Neither *Martis v. Grinnell Mutual Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) nor *Lewis v. Lead Industries Ass'n*, 793 N.E.2d 869, 876-77 (Ill. App. Ct. 2003), are analogous, where plaintiffs and defendants' relationships were more attenuated than the relationship here.

[77] *Haz-Mat Response* stands for the unremarkable and irrelevant proposition that when a property owner pays consideration under a contract with a third party for work performed by a subcontractor, that property owner has not been unjustly enriched at the subcontractor's expense.

[78] Pfizer's reliance on *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-md-01819, 2010 WL 5094289, at *6 (N.D. Cal. Dec. 8, 2010), is unpersuasive, given that it (incorrectly) relied on *Haz-Mat Response* despite not involving a subcontractor dispute. *Spires v. Hospital Corp. of America*, 289 F. App'x 269, 273 (10th Cir. 2008) merely held that patients claiming a hospital was understaffed did not allege a conferred benefit to hospital's parent corporation.

**Maine.** *In re Chocolate*, 749 F. Supp. 2d at 243 (permitting indirect purchaser unjust enrichment claims under Maine law).[79]

**Maryland.** Pfizer cites no state cases to support their argument that Maryland has adopted the direct benefit rule. And the federal cases upon which they rely cite no Maryland case law either. The single relevant Maryland case that Plaintiffs were able to identify expressly rejects the direct benefit rule. *See Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 571 (Md. Ct. Spec. App. 2007) ("[A] cause of action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly.").

**Massachusetts.** *In re Chocolate*, 749 F. Supp. 2d at 243 (permitting indirect purchaser unjust enrichment claims under Massachusetts law).

**Michigan.** "Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant." *In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2014 WL 2993753, at *31 (E.D. Mich. July 3, 2014); *Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 504 N.W.2d 635, 641 (Mich. 1993).[80]

**New Jersey.** *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) (permitting indirect purchaser claim for unjust enrichment under New Jersey law).

---

[79] *See also In re Flat Panel*, 2011 WL 4501223, at *10-11 (antitrust purchasers may pursue claims under Maine law); *Rivers v. Amato*, No. 00-cv-131, 2001 WL 1736498 (Me. Super., June 22, 2001), relied on by Pfizer here, does not set "forth a general rule that an unjust enrichment plaintiff must directly interact with the defendant."). Moreover, *Glenwood Farms, Inc. v. Ivey*, 228 F.R.D. 47, 52 (D. Me. 2005), does not purport to follow, and makes no mention of, any direct benefit rule.

[80] Pfizer's cases support no rule to the contrary. *New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Oct. 27, 2005) ("any indirect benefit defendant derived from plaintiffs was too attenuated" and the "express contracts already addressed the pertinent subject matter"). In *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008), any "language regarding a direct benefit requirement was made in dicta." *Suboxone*, 2014 WL 6792663, at *34 (rejecting *A&M* as neither persuasive nor dispositive).

**New York.** New York's law of unjust enrichment does not require that a plaintiff plead "direct dealing" or an "actual, substantive relationship" with a defendant (Def. Mem. 30), nor does New York follow any purported "direct benefit" rule (Def. Mem. 33)—the only requirement is that "plaintiffs' relationship with a defendant not be 'too attenuated.'" *Waldman v. New Chapter Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010) (holding that "the indirect purchaser can assert . . . an unjust enrichment claim against the manufacturer of the *product* itself" and distinguishing cases involving claims by indirect purchasers against suppliers of ingredients in products purchased by indirect purchasers).[81]

**North Carolina.** "Under North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction." *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x. 916, 921 (4th Cir. 2003) (recognizing that *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 923 (N.C. 1992), "suggests a broader approach to unjust enrichment" than the direct benefit rule).[82]

**North Dakota.** *Opp v. Matzke*, 559 N.W.2d 837, 839–40 (N.D. 1997) (no direct benefit requirement); *In re Auto. Parts*, 2014 WL 4793850, at *20 (permitting indirect purchasers' claim for unjust enrichment under North Dakota law).[83]

---

[81]   *See Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (no privity requirement; "the essential inquiry" is whether retaining benefit is "against equity and good conscience"); *In re Chocolate*, 749 F. Supp. 2d at 241 (N.Y. does not require "direct dealings" or "an actual, substantive relationship"); *Cox v. Microsoft Corp.*, 8 A.D.3d 39 (N.Y. App. Div. 2004); *Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (N.Y. App. Div. 1990).

[82]   Pfizer's cites to *Baker Construction Co. v. City of Burlington*, No. 09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009) and *Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989) are unavailing. *See In re Processed Egg*, 851 F. Supp. 2d at 932 (distinguishing *Baker* and *Effler*; North Carolina embraces a broader definition of "conferral of a benefit").

[83]   Pfizer's reliance on *Apache Corp. v. MDU Resources Group, Inc.*, 603 N.W.2d 891, 895 (N.D. 1999) is misplaced as the plaintiffs there could not bring an unjust enrichment claim because they could not prove absence of a justification for the enrichment, an essential element.

**Pennsylvania.** Pfizer cites one Pennsylvania state trial court case, *Stutzle v. Rhone-Poulenc S.A.*, No. 002768, 2003 WL 22250424, at *1-2 (Pa. Com. Pl. Sept. 26, 2003), to support the proposition that Pennsylvania has adopted the direct benefit rule. This case is an outlier; the majority of Pennsylvania cases that have considered the direct benefit rule have rejected it. *See Com. ex rel. Pappert v. Tap Pharm. Prods., Inc.*, 885 A.2d 1127, 1137–38 (Pa. Commw. Ct. 2005) (holding that a plaintiff need not plead that it directly conferred a benefit on defendant to state a claim for unjust enrichment); *see also D.A. Hill Co. v. Clevetrust Realty Investors*, 573 A.2d 1005, 1009 (Pa. 1990); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) ("Plaintiffs need not have directly dealt with each defendant . . . .").

**Rhode Island**. *In re Auto. Parts*, 2014 WL 4793850, at *20 (permitting indirect purchasers' claim for unjust enrichment under Rhode Island law).[84]

**South Carolina.** Pfizer argues South Carolina requires the "'existence of a legal duty owed to him or her by defendant'" (Def. Mem. 30) and the conferral of a direct benefit to defendant (Def. Mem. 33) for a plaintiff to recover for unjust enrichment. Even Pfizer's own cases say otherwise, stating first that the required elements are "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value" and then noting this is the "sole test" for liability. *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 512 (S.C. Ct. App. 2002) (citing *Myrtle Beach Hosp., Inc. v. City of Myrtle*

---

[84] *R & B Electric Co. v. Amco Construction Co*., 471 A.2d 1351 (R.I. 1984), involved the non-analogous subcontractor-owner relationship, distinguished *supra*, and the court held any benefit conferred was not retained due to home foreclosure. *Alessi v. Bowen Court Condominium*, No. 03-0235, 2010 WL 897246 (R.I. Super. Mar. 10, 2010), does not purport to announce any direct benefit rule and was affirmed on appeal on different grounds. 44 A.3d 736 (R.I. 2012). Pfizer thus has no basis to engraft a direct benefit rule. *See In re Flat Panel*, 2011 WL 4501223 (distinguishing *R&B Electric* and *Alessi* as inapplicable to indirect purchasers),

*Beach*, 532 S.E.2d 868, 872 (S.C. 2000)).[85] Moreover, *Pitts* and *Myrtle Beach* do not adopt or even discuss imposing a direct benefit rule. Nor are EPPs aware of any South Carolina case that does. And in the absence of any such authority, EPPs' claim should be allowed to proceed.

**Texas.** Plaintiffs are aware of no Texas state court that has adopted a direct benefit requirement, but note that Texas courts provide that a court must "look[] only to the justice of the case and inquir[e] whether the defendant has received money which rightfully belongs to another." *Doss v. Homecoming Fin. Network, Inc*., 210 S.W.3d 706, 711 (Tex. App. 2006).[86]

**Utah.** Utah does not follow any direct benefit rule. *In re Processed Egg*, 851 F. Supp. 2d at 934 (extensively surveying Utah law and holding "the Court concludes that Utah law does not mandate that a plaintiff demonstrate that she directly conferred a benefit upon a defendant."); *In re Auto. Parts*, 2014 WL 4793850, at *20.[87]

**Washington**. Pfizer's only cite, *Keil v. Scholten*, No. 48051-1-I, 2002 WL 988562 (Wash. Ct. App. Feb. 4, 2002), does not adopt or even discuss any direct benefit rule, but rather held a benefit was not conferred and because the party was "entitled to enforce the promissory note as written, she did not have any grounds for maintaining an unjust enrichment action." *Id.* at *5. In the absence of any authority to the contrary, Plaintiffs' claim should proceed.

---

[85] *Pitts* did not state the absence of "legal duty" *in general* is "fatal." The particular wrongful conduct there was premised on "breach of fiduciary duty/constructive fraud; fraudulent concealment …." 574 S.E.2d at 505. Thus the lack of "legal duty" in *that* case was fatal.

[86] Pfizer relies on a single case that held the State could not pursue claims against tobacco companies to recover costs to treat smokers because any benefit was too attenuated. *See State v. Am. Tobacco Co*., 14 F. Supp. 2d 956, 972 (E.D. Tex. 1997). The facts here are distinguishable. Plaintiffs are the actual purchasers of the product in question that is resulting in Pfizer's benefit.

[87] Pfizer cites to only one state-court case, *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987), which is entirely inapposite because its facts are based upon the finding that the defendant received no benefit whatsoever.

**West Virginia**. As Pfizer concedes, West Virginia has not adopted the direct benefit rule, and for that reason, this Court should not as well. *In re Processed Egg*, 851 F. Supp. 2d at 935 (declining to make prediction that state court would adopt direct benefit rule); *In re Chocolate*, 749 F. Supp. 2d at 243 (denying motion to dismiss West Virginia claims).

**Wisconsin**. *In re Suboxone Antitrust Litig*., 2014 WL 6792663, at *37 (permitting indirect purchaser unjust enrichment claim under Wisconsin law).

**Wyoming**. Pfizer's only cite, *Boyce v. Freeman*, 39 P.3d 1062, 1065-66 (Wyo. 2002), does not adopt or discuss a direct benefit rule; EPPs are unaware of a Wyoming case that does.

### B.     Common Law Unjust Enrichment Is Not Preempted by Antitrust Law.

Despite establishing above that (1) every jurisdiction recognizes an independent common law claim for unjust enrichment, (2) Plaintiffs alleged the necessary elements to state a claim and (3) no jurisdiction precludes unjust enrichment claims that allege a conferral of an indirect benefit, Pfizer argues that all of Plaintiffs' common law equitable claims are preempted because they arise under a set of facts that may invoke an antitrust statute. In essence, according to Pfizer, Plaintiffs' claims fail under a game of legal Three-Card Monte: while the common law *appears* to provide Plaintiffs an equitable claim for relief, in fact any claim is available *only* under antitrust statutes, a fact that warrants dismissal of unjust enrichment claims regardless of whether a state's antitrust statute even provides a plaintiff with relief. Both premises are false.

### 1.     It is Premature to Determine Whether Plaintiffs Have an Adequate Remedy at Law.

Pfizer argues that EPPs' unjust enrichment claims must be dismissed as to states where "an adequate remedy at law exists." Def. Mem.  23. This argument fails for the simple reason that unjust enrichment is a separate cause of action which EPPs are allowed to plead in the alternative under Federal Rule of Civil Procedure 8—regardless of consistency and whether

based on legal or equitable grounds.[88] Accordingly, even if a legal remedy would bar any unjust enrichment claims, it is premature to dismiss such claims before the availability of Plaintiffs' remedies are even determined.[89] Pfizer's own case law recognizes this fact.[90]

### 2. Pfizer Confuses Recovery for Statutory Antitrust Treble Damages with Common Law Equitable Relief for Unjust Enrichment.

Pfizer next argues that a state's adherence to the *Illinois Brick* rule limiting antitrust treble damages to only direct purchasers is proof positive that permitting an indirect purchaser claim for unjust enrichment—which seeks the equitable remedy of disgorgement—would conflict with that state's policy. But it is not proper to infer that a state adopting the *Illinois Brick* antitrust standing rule automatically precludes all claims of unjust enrichment merely because the claims arise from the same nucleus of facts that give rise to an antitrust suit.[91]

"Absent specific legislative intent to the contrary, '[l]egislatures are deemed to draft legislation against the backdrop of the common law' and state statutes are interpreted not to displace state common law causes of action."[92] Thus "[i]n order to abrogate a common-law principle, [a] statute must 'speak directly' to the question addressed by the common law."[93]

---

[88]   *See In re Processed Egg*, 851 F. Supp. 2d at 915 ("claim cannot be deficient on the grounds that the complaint also alleges claims at law for alternative forms of relief.").

[89]   *See, e.g., In re Light Cigarettes*, 751 F. Supp. 2d 183, 191 ("In general, courts cannot determine the adequacy of a legal remedy from the pleadings"); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 766 (D. Md. 2012); *In re Chocolate*, 749 F. Supp. 2d at 238.

[90]   *See* Def. Mem. 23 (citing *Levinson v. Mass. Mut. Life Ins. Co.*, No. 4:06cv086, 2006 WL 3337419, at *9 (E.D. Va. Nov. 9, 2006) ("inappropriate to dismiss Plaintiffs' claim of unjust enrichment" when case still "inadequately developed.").

[91]   *See, e.g., Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 553 (N.D. Tex. 2009) ("[T]he absence of a statutory cause of action under the TTIA does not automatically preclude all common law claims that implicate the TTIA."); *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 468–69 (E.D. Pa. 2010) (denying motion to dismiss unjust enrichment claim because the state statute "does not provide an exclusive statutory remedy").

[92] *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d at 193.

[93] *United States v. Texas*, 507 U.S. 529, 534 (1993).

Moreover, Pfizer's attempt to displace the court's "traditional equitable authority" is prohibited absent the "clearest command" or "inescapable inference" to the contrary.[94]

Pfizer has failed to meet this burden.  Pfizer cites no statute, state or federal, that speaks directly to the question of whether a set of facts that may give rise to a state antitrust theory abrogates unjust enrichment claims and equitable remedies.[95] None exist. At best, it relies on state statutes that require a state's *antitrust* laws be read in harmony with federal *antitrust* law (Def. Mem. 16 & Attachment 6). But as the court ruled in *G-Fees*, this does not permit an "inescapable inference" that common law equitable claims are displaced. 584 F. Supp. 2d at 46.

Moreover, and importantly, permitting the equitable remedy of disgorgement does not conflict with *any* policy underlying the *Illinois Brick* rule—Plaintiffs are not "circumventing" the policy of any state, even in those that expressly adopt that decision and preclude antitrust damages to indirect purchasers. *See In re: Cardizem CD Antitrust Litig.*, 01-cv-72806, ECF No. 53, at 31-32 (E.D. Mich. May 23, 2003) (hereinafter "Slip Op.") (distinguishing state court's antitrust rulings in every state as speaking only as to recovery for antitrust damages and finding equitable claims for disgorgement not in conflict with *Illinois Brick* rule). Pfizer's cases fail to appreciate that the *Illinois Brick* Court's decision flows not from any concern, as Pfizer suggests, "to limit antitrust liability" (Def. Mem. 24) but from a concern that private antitrust enforcement would be hindered if courts were forced to sort out and apportion *damages* from overcharges that may have been passed on from direct to indirect purchasers.[96] Here, as the courts in *Cardizem*

---

[94] *Miller v. French*, 530 U.S. 327, 340 (2000) (internal citations and quotations omitted).

[95] *In re Chocolate*, 749 F. Supp. 2d at 237 (dismissal unwarranted without "any statutory language restricting the equitable remedies available … or any specific authority holding that an indirect purchaser may not measure its recovery by the defendant's illicit benefit").

[96] *Illinois Brick*, 431 U.S. at 745 ("The apportionment of the recovery throughout the distribution chain would increase the overall costs of recovery by injecting extremely complex

(Slip Op. at 32) and *G-Fees* (584 F.Supp.2d at 46) found, there is no need to determine the amount of overcharges passed on from direct to indirect purchasers; recovery is not based on amounts Plaintiffs lost, but rather on *what Pfizer gained*.[97] The problem of duplicative recovery noted by the *Illinois Brick* Court is also absent here. 431 U.S. at 731. If Plaintiffs succeed on their claims, they will share equally the disgorged funds. And because an equitable claim seeking disgorgement is considered a "wholly separate cause[] of action" than a claim for antitrust damages, there is no conflicting policy that prevents one party to obtain disgorgement while a different party pursues antitrust damages. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 20 (D.D.C. 2001) (FTC's successful petition for disgorgement does not preclude ability of direct purchasers to maintain antirust cause of action for treble damages). Thus, "no reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy."[98]

## CONCLUSION

For all the foregoing reasons, Pfizer's motion to dismiss should be denied.

---

issues into the case [and] would reduce the benefits to each plaintiff by dividing the potential recovery…. The combination of increasing the costs and diffusing the benefits of bringing a treble-damages action could seriously impair this important weapon of antitrust enforcement.").

[97] Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev. 1277, 1287 (1989) (unjust enrichment's disgorgement remedy is particularly appropriate when "plaintiff's damages are hard to measure and defendant's profits are clear"); *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*, 843 A.2d 252, 293 (Md. Ct. Spec. App. 2004) ("unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff.").

[98] *In re G-Fees*, 584 F. Supp. 2d at 46; *see also King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 539 (E.D. Pa. 2010) (denying motion to dismiss unjust enrichment claims "as an 'end-run' around statutory limitations on remedies" provided under antitrust statutes).

Dated: March 30, 2015

Respectfully Submitted,

/s/ *Wyatt B. Durrette, Jr.*
Wyatt B. Durrette, Jr. (VSB #04719)
Barrett E. Pope (VSB #20574)
J. Buckley Warden IV, (VSB #79183)
DURRETTECRUMP PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
T: (804) 775-6900
F: (804) 775-6911
wdurrette@durrettecrump.com
bpope@durrettecrump.com
bwarden@durrettecrump.com

*Liaison Counsel for the Putative End-Payor
Class*

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
Justin N. Boley (*pro hac vice*)
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
T: (312) 346-2222
F: (312) 346-0022
kaw@wexlerwallace.com
kae@wexlerwallace.com
jnb@wexlerwallace.com

*Co-Lead Counsel for the Putative
End-Payor Class*

Jeffrey L. Kodroff
John A. Macoretta
Spector Roseman Kodroff & Willis PC
1818 Market St
Suite 2500
Philadelphia, PA 19103
T: (215) 496-0300
F: (215) 496-6611
jkodroff@srkw-law.com
jmacoretta@srkw-law.com

*Co-Lead Counsel for the Putative
End-Payor Class*

Daniel E. Gustafson
Jason S. Kilene
Sarah J. Payne
Gustafson Gluek PLLC
120 South Sixth St
Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
spayne@gustafsongluek.com

Heidi Marie Silton
Karen Hansen Riebel
Lockridge Grindal Nauen PLLP
100 Washington Ave. S
Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
hmsilton@locklaw.com
khriebel@locklaw.com

Jayne A. Goldstein
Pomerantz LLP (FL-NA)
1792 Bell Tower Ln S, 203
Weston, FL 33327
T: (954) 315-3454
F: (954) 315-3455
jagoldstein@pomlaw.com

J. Douglas Richards
Sharon K. Robertson
Cohen Milstein Sellers & Toll, PLLC
88 Pine Street
14th Floor
New York, New York 10005
T: (212) 838-7797
F: (212) 838-7745
drichards@cohenmilstein.com
srobertson@cohenmilstein.com

Frank R. Schirripa
Michael A. Rose
Hach Rose Schirripa & Cheverie LLP
185 Madison Avenue
New York, New York 100016
T: (212) 213-8311
fs@hrsclaw.com

Bernard Joseph DiMuro
DiMuro Ginsberg PC
1101 King Street
Suite 610
Alexandria, VA 22314-2956
T: (703) 684-4333
F: (703) 548-3181
bdimuro@dimuro.com

William H. Narwold
Donald A. Migliori
Michael M. Buchman
John A. Ioannou
Alex R. Straus
MOTLEY RICE LLC
600 Third Avenue, Suite 2101
New York, New York  10016
T: (212) 577-0040
F: (212) 577-0054

Christopher Casper
JAMES, HOYER, NEWCOMER
& SMILJANICH, P.A.
One Urban Centre, Suite 550
4380 West Kennedy, Blvd.
Tampa, FL 33609-2589
T: (813) 397-2300
F: (813) 397-2310

Kimberly C. Walker
KIMBERLY C. WALKER, PC
14498 Scenic Hwy. 98
Fairhope, AL 36532
T: (251) 928-8461
F: (251) 328-8461
kwalker@kcwlawfirm.com

Susan Rebbeca Podolsky
The Law Offices of Susan R. Podolsky
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
T: (571) 366-1702
F: (703) 647-6009
spodolsky@podolskylaw.com

Gregory S. Asciolla
Matthew J. Perez
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
T: (212) 907-0700
F: (212) 818-0477
gasciolla@labaton.com
mperez@labaton.com

Natalie Finkelman Bennett
James C. Shah
Eric L. Young
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
T: (610) 891-9880
F: (610) 891-9883
nfinkelman@sfmslaw.com
jshah@sfmslaw.com

Steve D. Shadowen
HILLIARD & SHADOWEN LLP
39 West Main Street
Mechanicsburg, Pennsylvania 17055
T: (855) 344-3298
steve@hilliardshadowenlaw.com

Elizabeth G. Arthur
R. Bryce Duke
HILLIARD & SHADOWEN LLP
919 Congress Ave. Suite 1325
Austin, Texas 78701
T: (855) 344-3298
elizabeth@hilliardshadowenlaw.com
bryce@hilliardshadowenlaw.com

49

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record.

/s/   Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Barrett E. Pope, Esquire (VSB No. 20574)
J. Buckley Warden IV, Esquire (VSB No. 79183)
Durrette Crump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettecrump.com
bpope@durrettecrump.com
bwarden@durrettecrump.com