**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| IN RE CELEBREX (CELECOXIB) ANTITRUST LITIGATION<br><br><br>This document relates to:<br><br>End-Payor Actions | Lead Case No. 14-cv-395 |

**<u>PFIZER'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS END-PAYOR PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................1

I.     EPPS' CLAIMS FAIL FOR THE SAME REASONS THAT DPPS' CLAIMS
       FAIL.........................................................................................................................1

II.    FEDERAL PATENT LAW PREEMPTS EPPS' STATE LAW CLAIMS........................3

III.   EPPS LACK STANDING TO ASSERT STATE LAW CLAIMS ...................................6

       A.     EPPs Lack Article III Standing to Assert Claims Under the Laws of 31
              Jurisdictions in Which They Have Not Alleged Injury .....................................6

       B.     EPPs Lack Standing to Assert Antitrust Claims in Four *Illinois Brick*
              States ...............................................................................................................10

       C.     EPPs Lack Standing Under *Illinois Brick* to Assert Claims Under the
              Massachusetts Consumer Protection Act................................................................13

       D.     EPPs Cannot Circumvent *Illinois Brick* by Asserting Antitrust Claims
              under Unjust Enrichment Theories in 24 Jurisdictions.........................................13

IV.    EPPS' STATE LAW ANTITRUST CLAIMS MUST BE DISMISSED FOR
       ADDITIONAL REASONS ............................................................................................15

       A.     EPPs Cannot Allege Primarily Intrastate Conduct in Five Jurisdictions..............15

       B.     EPPs Fail to State a Claim Under California, New York and Tennessee
              Statutes that Prohibit Only Concerted Action.......................................................16

       C.     EPPs Fail to Plead Facts Plausibly Suggesting a Cognizable Future Injury
              as Required for Injunctive Relief Claims Under Federal Antitrust Law ...............17

V.     EPPS' STATE CONSUMER PROTECTION CLAIMS MUST BE DISMISSED ..........18

VI.    EPPS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED............................20

       A.     EPPs' Undifferentiated Assertion of Unjust Enrichment Claims Fails
              Entirely.............................................................................................................20

       B.     Unjust Enrichment, an Equitable Remedy, Is Unavailable when an
              Adequate Remedy at Law Exists .........................................................................21

       C.     Where EPPs Cannot Provide Any Basis on Which Pfizer Has Been
              Unjustly Enriched, Unjust Enrichment Claims Fail ..............................................21

       D.     Several States Invoked by EPPs Expressly Do Not Recognize Unjust
              Enrichment As an Independent Cause of Action.....................................................22

       E.     EPPs Fail to Allege the Quasi-Contractual Relationship Fundamental to an
              Unjust Enrichment Claim ...................................................................................24

## INTRODUCTION

No matter how it is dressed up, this matter is not viable and should be dismissed now before it takes on the expensive trappings of a multistate class action.  To avoid this inevitable conclusion, the End-Payor Plaintiffs' ("EPPs") Opposition cites to inapposite authority, mischaracterizes the cases cited by Defendants (collectively, "Pfizer"), and misstates the law of multiple jurisdictions in a futile effort to avoid dismissal of their Complaint.  EPPs' claims share the same fundamental defects that mandate dismissal of Direct Purchaser Plaintiffs' ("DPPs") claims, including the failure plausibly to allege fraud on the Patent & Trademark Office ("PTO") and sham litigation.  Moreover, EPPs' laundry list of state law claims is fatally flawed and should be dismissed for additional, state-specific reasons.

First, EPPs lack Article III standing in 31 jurisdictions in which they do not even claim to have been injured.  Second, EPPs lack standing under *Illinois Brick* in states that follow the Supreme Court's prohibition on indirect purchaser claims, which EPPs cannot circumvent by asserting antitrust claims under a different name.  Third, EPPs fail to state a claim under the consumer protection laws for several reasons.  Fourth, EPPs fail to state a claim under the laws of states that require a nexus to intrastate commerce.  Finally, EPPs fail to state a claim for unjust enrichment.  EPPs' Complaint should be dismissed with prejudice.

## ARGUMENT

## I.   EPPS' CLAIMS FAIL FOR THE SAME REASONS THAT DPPS' CLAIMS FAIL

Arguments directed at DPPs' claims apply equally to EPPs' claims, which should be dismissed for the same reasons.  *See* Pfizer's Mem. in Support of Mot. to Dismiss End-Payor Pls.' Compl. at 1, 4-5, No. 2:14-cv-00395, ECF No. 53 (Mar. 2, 2015) ("Mem.").[1]  For instance,

---

[1] EPPs admit their claims rise and fall on the same arguments by incorporating DPPs' Opposition to Pfizer's Motion to Dismiss.  End-Payor Pls' Mem. in Opp'n to Pfizer's Mot. to Dismiss at 2,

EPPs fail plausibly to allege that Pfizer committed *Walker Process* fraud in procuring U.S. Reissue Patent No. RE 44,048 ("the RE '048 patent") because, among other things, all relevant factual information was disclosed to the PTO, which reissued the patent after extensive scrutiny. Pfizer's Mem. in Support of Mot. to Dismiss Pls' Corrected Consol. Am. Class Action Compl. at 18-34, *In Re: Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361 (Oct. 20, 2014), ECF No. 46 ("DPP Motion").   EPPs also fail to allege sham litigation in the assertion of the RE '048 patent because, among other things, the PTO found Pfizer's legal arguments persuasive, and the relevant legal authority, far from rendering Pfizer's position so unreasonable as to be objectively baseless, actually supports Pfizer's position.   DPP Motion at 20-36.

EPPs argue that the PTO's reissuance of the RE '048 patent does not diminish their claims, citing a case holding that a court can inquire into the validity of a patent that was affirmed on re-examination.   Opp'n at 2-3 (citing *Xerox Corp. v. 3Com Corp.*, 2004 U.S. Dist. LEXIS 9717 at *8 (W.D.N.Y. May 21, 2004)).   Pfizer does not dispute that a court can invalidate a patent; rather, Pfizer's point is that the PTO's reissuance of the RE '048 patent – after full disclosure by Pfizer and an unusually high level of scrutiny by multiple PTO examiners and attorneys – demonstrates that EPPs' allegations of *fraud* on the PTO and *sham litigation* are *implausible*.   DPP Motion § II.B.   Nothing in EPPs' Opposition changes this.

Nor does Fed. R. Evid. 408 bar this Court from considering the generics' settlement of the RE '048 patent litigation in evaluating EPPs' sham litigation claim.   Opp'n at 3.   Pfizer does not seek to use the substance of the settlements or statements made in connection with the settlements to disprove the validity of the generics' claim.   Rather, as allowed by the rule, Pfizer

---

No. 2:14-cv-00395, ECF No. 56 (Mar. 30, 2015) ("Opp'n").   Pfizer incorporates by reference Pfizer's Reply in Support of its Motion to Dismiss in the DPP action.   *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361 (Nov. 24, 2014), ECF No. 55.

relies on *the fact* of the settlements, a public fact *alleged by EPPs themselves in their Complaint*, to show the implausibility of EPPs' claims that no reasonable litigant would have expected Pfizer to succeed in the litigation.  *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 306 (4th Cir. 2012) ("While the *reason* Clear Channel ceased using the name . . . for one year (as part of settlement efforts) may be inadmissible under Rule 408, the *fact* that it did so is not" where that information was public).  While it is undoubtedly true that parties settle for myriad reasons, the Complaint contains no plausible explanation as to why the generics would settle litigation that EPPs contend was utterly baseless.  EPPs' sham litigation claim, therefore, does not comply with *Twombly* for this and other reasons.  DPP Motion at 37-39.[2]

The Court should, therefore, dismiss EPPs' claims for failure plausibly to allege *Walker Process* fraud, sham litigation, or unlawful settlement of litigation.

## II.   FEDERAL PATENT LAW PREEMPTS EPPS' STATE LAW CLAIMS

EPPs argue that their state law claims are not preempted because *Walker Process Equipment Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), held that patent law did not preempt antitrust claims.  Opp'n at 4-5.  *Walker Process*, however, did not address patent law preemption of state law claims, but whether a plaintiff could assert a *federal* antitrust claim premised on fraud on the PTO.  *Walker Process* sought to accommodate the policies of the patent and antitrust laws, 382 U.S. at 179 (Harlan, J., concurring), which is consistent with courts' review of competing federal statutes.  *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579,

---

[2] The notes to Rule 408 also suggest that evidence of settlements cannot be used when offered against a *party to the settlement*, as opposed to against non-parties (i.e., EPPs).  Fed. R. Evid. 408, Advisory Comm. Notes (rule applies to "completed compromises *when offered against a party thereto*") (emphasis added); *id.* (rule reverses existing law that "evidence of conduct and statements made in compromise negotiations is admissible in *subsequent litigation between the parties*") (emphasis added).

583-84 (7th Cir. 1999). *Walker Process* is thus inapposite to the question raised here of whether federal patent law preempts *state law* claims based on fraud on the PTO. *Id.* ("Preemption is not the applicable doctrine" when question is "whether one federal law takes precedence over another."). That *Walker Process* found no conflict between two *federal* statutes does not address whether a state law claim is preempted by federal law. *Henderson v. Nat'l R.R. Passenger Corp.*, No. 13-6792, 2015 WL 728094, at *6 (S.D.N.Y. Feb. 15, 2015) (noting that "preemption doctrine flows from the Constitution's Supremacy Clause, and thus is inapplicable to a potential conflict between two federal statutes") (internal citation and quotation omitted). EPPs are thus wrong in arguing that "[p]atent law does not preempt federal *Walker Process* claims, so patent law obviously does not preempt state-law *Walker Process* claims." Opp'n at 5.[3]

EPPs also cannot salvage their claims by saying they are directed to conduct "in the marketplace," Opp'n at 5-8; there can be no question that the Complaint is fundamentally predicated on alleged conduct before the PTO, and courts have squarely rejected attempts to recast such conduct as "marketplace" conduct. In *Cipro*, the court held that the federal patent laws preempted the indirect purchasers' state law claims because they were "directed to allegedly tortious conduct before the PTO, not tortious conduct in the marketplace." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 544 (E.D.N.Y. 2005); Mem. at 7 (citing cases). It made no difference that the indirect purchasers also challenged an Orange Book listing, as EPPs do here, because the listing was improper only if the patent was obtained by fraud on the PTO. *Cipro*, 363 F. Supp. 2d at 546. The court found plaintiffs could not "by this collateral or backdoor method" avoid preemption. *Id.* Other courts have also held that state

---

[3] EPPs also cite *Gunn v. Minton*, 133 S. Ct. 1059 (2013), Opp'n at 5 n.9, but *Gunn* simply held that federal courts did not have exclusive jurisdiction over a state malpractice claim; it did not address preemption.

law claims arising from alleged fraud on the PTO or inequitable conduct were not based upon marketplace conduct and thus were preempted.  Mem. at 7 (citing cases).

Nor did *Dow Chemical Co. v. Exxon Co.*, on which EPPs rely, hold otherwise.  139 F.3d 1470 (Fed. Cir. 1998).  The *Dow* court held that a state law tortious interference claim was not preempted by patent law because it "require[d] elements entirely different to those required for inequitable conduct" and the "required elements [took] place in the marketplace, not before the PTO."  *Id.* at 1477.  Crucially, the court found the claim could "be made out *without there being any misconduct whatsoever in the PTO*."  *Id.* (emphasis added).  The court also held that "the protection of commercial, contractual relations is primarily the concern of state law."  *Id.*  Here, EPPs' state law claims cannot succeed without proof that Pfizer committed fraud on the PTO or that the PTO improperly reissued the patent, and their claims do not invoke unique state law concerns like the contractual claim did in *Dow*.  Courts since *Dow* have dismissed as preempted attempts, like that of EPPs here, to use state law claims to challenge the enforcement of allegedly fraudulent patents.  Mem. at 5-8.

EPPs rely on *In re DDAVP Indirect Purchaser Antitrust Litigation*, but there the court allowed state law claims to proceed because, in a prior federal patent proceeding, the patents at issue were found unenforceable for inequitable conduct before the PTO, and it was on this specific basis that the court distinguished cases finding preemption.  903 F. Supp. 2d 198, 205-06 217, 218 n.9 (S.D.N.Y. 2012).  No such prior finding of inequitable conduct exists here.[4]  In the end, EPPs' claims rise and fall based on the alleged actions of Pfizer before the PTO.  As such, federal patent law preempts EPPs' state law claims, and those claims should be dismissed.

---

[4] The court also misapplied *Dow*, which is inapplicable because, as discussed, unlike the tortious interference claim in *Dow*, *Walker Process* fraud claims depend entirely on proof of misconduct before the PTO and are not primarily the concern of state law.

## III.   EPPS LACK STANDING TO ASSERT STATE LAW CLAIMS

### A.   <u>EPPs Lack Article III Standing to Assert Claims Under the Laws of 31 Jurisdictions in Which They Have Not Alleged Injury</u>

EPPs cannot bring claims under the 31 jurisdictions where they lack Article III standing. This is a threshold issue and should be decided now.  An overwhelming number of courts have held that plaintiffs lack standing to assert a claim under a statute of a state where no named class plaintiff claims injury.  Mem. at 10-11.  Indeed, recent antitrust cases involving theories of alleged delay of generic pharmaceutical competition, *brought by many of the same plaintiffs and attorneys as here*, have so held.  *In re Aggrenox Antitrust Litig.*, No. 14-2516, 2015 WL 1311352, at *19-20 (D. Conn. Mar. 23, 2015); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757-59 (E.D. Pa. 2014); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-2445, 2014 WL 6792663, at *20-22 (E.D. Pa. Dec. 3, 2014); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-02521, 2014 WL 6465235, at *19 (N.D. Cal. Nov. 17, 2014).

EPPs argue, incorrectly, that Fed. R. Civ. P. 23 relieves them of the threshold constitutional burden of establishing standing.  Specifically, EPPs argue that merely purporting to represent a class gives a plaintiff standing to assert any claims – in any state – for which that representative plaintiff admittedly lacks standing, so long as there are other potential members of the putative class who *might* one day have standing to sue.  Opp'n at 8-17.  EPPs further argue that all they need to show to establish standing is general injury from Pfizer's allegedly unlawful conduct.  *Id.* at 8.  But EPPs' argument runs directly counter to Supreme Court precedent establishing that (i) a plaintiff must demonstrate standing for each claim it asserts, and (ii) named class plaintiffs cannot piggy-back on the claims of proposed class members to satisfy Article III. Mem. at 8-9 (citing cases); *see also Aggrenox*, 2015 WL 1311352, at *19-20 (there is "forceful

authority" requiring Article III standing to be analyzed claim-by-claim, and dismissing all claims in states where named plaintiffs failed to allege injury).[5]  Because each named plaintiff must have Article III standing, and there must be a named plaintiff with standing to assert each claim, EPPs' state claims must be dismissed where no named plaintiff allegedly suffered injury.[6]

Nor should this Court defer deciding this threshold issue.  EPPs appear to argue that the issue of constitutional standing, the "threshold question in every federal case," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), can be deferred until after class certification – potentially months or even years into the case.  Opp'n at 8-9.  The weight of authority rejects this view.  Mem. at 9-11 (citing cases).[7]  While some cases cited by EPPs have held differently, those courts misread *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and erroneously transform the discussion in *Ortiz* and *Amchem* of the *order in which a court may consider issues in deciding a motion* into a *rule permitting parties to defer establishing standing until later in a case*, something neither case held.  Both cases simply allow courts, as a matter of expediency, to reject claims on Rule 23 grounds when dismissal on Article III grounds may also be available.  *Ortiz*, 527 U.S. at 831 (declining to decide Article III standing of absent class members as case could be disposed of by rejecting class); *Amchem*, 521

---

[5] *Central Wesleyan College v. W.R. Grace & Co.*, cited by EPPs, supports Pfizer's argument, as class plaintiffs must establish standing, not merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  6 F.3d 177, 188 (4th Cir. 1993) (internal citations and quotation omitted).

[6] Although EPPs acknowledge that the Supreme Court has repeatedly held that "a plaintiff must demonstrate standing for each *claim*," they assert that the Court meant standing for each *injury*.  Opp'n at 15-16 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).  There is no support for this assertion.  Indeed, in *Davis*, the Court allowed an individual plaintiff's claim under a separate portion of a statute because it determined that plaintiff himself faced the requisite injury necessary for him to bring that claim.  554 U.S. at 734-35. .

[7] *See also In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 215 (E.D. Pa. 2012).

U.S. at 612-13 (declining to reach Article III issues where class certification ruling dispositive).[8]

Where there is a clear absence of Article III standing, however, as here, courts are not free to ignore that absence or defer consideration of it to another day.  As one court explained, if a plaintiff could defer the Article III standing issue in the manner EPPs propose, "*a plaintiff would be able to bring a class action complaint under the laws of nearly every state . . . without having to allege concrete, particularized injuries relating to those states*, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis. . . . [T]he plaintiff would have to do no more than name the preserve on which he intends to hunt." *Magnesium*, 2011 WL 5008090, at *10 (emphasis added).  This reasoning applies equally here. There is no basis to defer Article III questions to a later date, as EPPs propose.  EPPs also argue that if a class representative has established standing as to one claim, it can also advance claims under Rule 23 for which it has no standing.  Opp'n at 9-11.  But, in the cases cited by EPPs, the named plaintiff represented a class asserting the *same* claims under the *same* statutes as the named plaintiff, and had standing to bring such claims.[9]  In *Sosna v. Iowa*, the Supreme Court

---

[8] *See also Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record if there is also present some other ground upon which the case may be disposed of."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 153 n.4 & 154 (E.D. Pa. 2010) ("Courts utilize the advice of cases like *Ashwander* when two issues, one constitutional and one nonconstitutional, are 'properly presented by the record' at the same time.  Courts do not wait for potentially dispositive issues to arise at later stages of litigation solely in an effort to postpone and avoid constitutional adjudication." (internal citation omitted)).

[9] EPPs cite cases addressing Rule 23 class certification, but those cases do not hold that named plaintiffs need not have Article III standing for each claim asserted.  *E.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136 (4th Cir. 1984) (no question of Article III standing);  *In re Deepwater Horizon*, 739 F.3d 790, 798-99 (5th Cir. 2014) (class certification issue was whether individuals had Article III standing, not whether there were claims asserted for which no party had standing to assert); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) (explaining that "the issue here is one of compliance with the provisions of Rule 23, not one of Article III standing" because the issue was whether injuries to named plaintiffs were the same as those advanced on behalf of the class).

held that a plaintiff with standing to bring a Due Process claim could represent a class as to the same claim.  419 U.S. 393, 403 (1975); *see also Deiter v. Microsoft Corp.*, 436 F.3d 461, 464, 467 (4th Cir. 2006) (named plaintiff with standing to bring Sherman Act claim sought to represent class asserting claims under same statute).[10]  Here, EPPs seek to assert claims under *different* statutes, which the Supreme Court has held cannot be done unless plaintiffs have standing under each statute.  Mem. at 8-9 (citing cases).[11]

EPPs further argue that Article III constitutional standing is too burdensome because it "would require class counsel to identify representatives from each state involved in a multistate class action," which "would render class actions considerably more cumbersome to initiate."  Opp'n at 12 (quoting *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004)).  Even if this were true, such prudential policy considerations cannot outweigh constitutional requirements.  *DaimlerChrysler*, 547 U.S. at 341 ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  (internal citation and quotations omitted)).  Nor is EPPs' approach good policy.  The Supreme Court's purpose in considering class certification or other bases for dismissal first was to avoid ensnaring courts in difficult

---

[10] Other cases EPPs cite are similar.  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517-20 (6th Cir. 1976) (plaintiff with standing to bring discrimination claim could potentially represent class asserting same); *Arreola v. Godinez*, 546 F.3d 788, 790-91, 795 (7th Cir. 2008) (plaintiff with standing to bring § 1983 claim could potentially represent class asserting same); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591-94 (8th Cir. 2009) (plaintiff with standing to bring ERISA claim could potentially represent class asserting same); *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1349-51 (11th Cir. 2001) (same); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306-07 (3d Cir. 1998) (addressing whether named plaintiffs *with standing* could represent absent class members).

[11] *See also Wellbutrin*, 260 F.R.D. at 153 n.4 (rejecting argument that "an injury providing standing under the law of *some* state is enough to provide for standing to bring [ ] claims on behalf of proposed class members from *all* states. . . . [B]ecause a standing analysis requires a plaintiff to establish standing on a claim by claim basis, the threshold question of standing is not satisfied by an assertion of standing on less than all claims.").

constitutional issues when the case can be dismissed on simpler grounds.  *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) (noting that Supreme Court's "'logical antecedence' language is relevant when resolution of class certification *obviates* the need to decide issues of Article III standing" and does not "instruct[] courts to always treat class certification first and to treat the class as the relevant entity for Article III purposes").  This goal is certainly not satisfied by requiring a court instead to spend months overseeing claims before considering whether it has jurisdiction, as EPPs propose.  Nor should it be difficult for counsel to find a plaintiff with standing to assert each cause of action in a Complaint *if such plaintiffs exist*.  Where no injured person has been identified, and is instead assumed, this fundamental goal is nullified, and a court's time might well be wasted.

EPPs admit that no named plaintiff suffered any injury in 31 jurisdictions.[12]  Thus, they lack standing to assert such claims, which must be dismissed with prejudice.[13]

### B.  EPPs Lack Standing to Assert Antitrust Claims in Four *Illinois Brick* States

**Florida.**    EPPs argue that indirect purchasers can bring claims for anticompetitive conduct under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202.  Opp'n at 18.  However, EPPs also bring a claim under Florida Antitrust Law, Fla. Stat. § 542.19 (EPP Compl. ¶ 280(d)) and they do not dispute that *Illinois Brick* bars their claims under *this statute*.  *Mack v. Bristol-Meyers Squibb Co.*, 673 So. 2d 100, 103 (Fla. Ct. App. 1996); Mem. at 11-12.

---

[12]  Alaska, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Missouri, Montana, Nebraska, New Hampshire, New Mexico, Oregon, Puerto Rico, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming.

[13] EPPs should not be given another opportunity to replead as they have been on notice of the need to allege Article III standing and all of the other requirements of their state and common law claims, having filed similar complaints in multiple other actions where they are represented by many of the same counsel, and already had the opportunity to replead when they filed the instant amended complaint in January 2015.

EPPs' claim under the Florida Antitrust Law should be dismissed.

**Illinois**.  EPPs argue that while it is clear that the Illinois Antirust Act ("IAA") allows only the state Attorney General to bring a class action on behalf of indirect purchasers "in any court of this State," this does not bar them from bringing a class action under the IAA in *federal* court.  Opp'n at 18-19.  Federal courts have rejected this very argument, however, dismissing indirect purchaser IAA claims because the "no indirect purchaser class action rule was expressly adopted as an integral part of the [IAA's] repeal of *Illinois Brick*."  *United Food*, 2014 WL 6465235, at *23; *see also Suboxone*, 2014 WL 6792663, at *27.

The *Wellbutrin* court similarly rejected in effect the same argument that EPPs make here – that class actions can be brought in courts outside Illinois – explaining that the Illinois legislature specifically limited the substantive right of indirect purchasers to sue for damages, and "[i]t would be inconsistent to . . . conclude that the substantive right [of indirect purchasers to sue under the IAA] is intended to be enforceable in courts outside of Illinois, but not the accompanying restrictions [which require such suits to be brought by the Attorney General]."  *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 676 (E.D. Pa. 2010).  EPPs fail to cite a *single cas*e holding that anyone other than the Illinois Attorney General may recover class action damages for indirect purchasers under the IAA in courts outside of Illinois.

The cases EPPs cite for the proposition that "a court of this State" means only an Illinois state court do not address the IAA.  Opp'n at 18 n.23.  *Ransom v. Marrese* concerned a provision of the Indiana Medical Malpractice Act that was "procedural, rather than substantive in nature." 524 N.E.2d 555, 556 (Ill. 1988).  And *Piechur v. Redbox Automated Retail, LLC.* dealt with a contractual forum selection clause in a DVD rental agreement that excluded the Southern District of Illinois as a forum.  No. 09-9840, 2010 WL 706047, at *1-2, 4 (S.D. Ill. Feb. 24, 2010).

These cases do not apply here, where allowing EPPs to bring a claim in federal court would effectively expand a substantive right that was expressly limited by state statute.

Nor does EPPs' analysis of the statutory history help them.  EPPs note that language was added to the IAA that provides: "[t]he attorney General may also bring an action in the name of this State, as *parens patriae* on behalf of persons residing in this State."  Opp'n at 19.  But this language did not alter the restriction on indirect purchasers' ability to bring class actions under the IAA.  EPPs contend that this provision "supports the preservation of indirect purchaser class suits under state and federal law so long as those suits are subject to the jurisdiction of federal courts."  *Id.*  But EPPs cite no express language to this effect in the legislative history, instead trying to divine intent from the phrase "may also" that simply indicates additional powers were granted to the Attorney General and says nothing about the powers of indirect purchasers.  *See* H.B. 2246, 96th Gen. Assemb., Reg. Sess. (Ill. 2010) (noting that amendment grants Attorney General *additional* power to bring *parens patriae* action).  Nor is EPPs' reading of the statute consistent with Illinois authority holding that the IAA bars indirect purchaser claims without distinction as to whether those claims are brought in state or federal court.  *Bobrowicz v. City of Chicago*, 522 N.E.2d 663, 669 (Ill. App. Ct. 1988) ("The statute clearly mandates that [an indirect purchaser class action] be brought by the Attorney General"); *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 544-45 (Ill. App. Ct. 1996) (indirect purchaser class action "necessarily precluded by" the IAA).  Finally, EPPs fail to explain why the IAA would prevent indirect purchasers from bringing a class action in state court, but allow them to bring the same action in federal court.  EPPs' Illinois Antitrust Act claim should be dismissed.

**Rhode Island**.  Rhode Island's *Illinois Brick* repealer permits indirect purchasers, such as EPPs, to maintain actions under the <u>Rhode Island Antitrust Act</u> as to conduct occurring *after* July

15, 2013.  Mem. at 12-14.  Pfizer cited ample authority showing that courts have refused to apply the Rhode Island and other *Illinois Brick* repealers retroactively in these circumstances.  *Id.*  The cases cited by EPPs are not to the contrary.  Opp'n at 20.  In *Landgraf v. USI Film Products*, the Supreme Court *applied* the strong general presumption against retroactivity.  511 U.S. 244, 278, 280-86 (1994) (expressing intent not "to displace the traditional presumption against applying statutes affecting substantive rights . . . to conduct arising before their enactment").  And the court in *Nexium* made no finding on the retroactivity of the statute.  Order at 3-4, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-02409 (D. Mass. Oct. 23, 2013), ECF No. 448.

EPPs argue that, in any event, they should be able to claim damages for injuries they suffered after July 15, 2013.  Opp'n at 20.  Here, however, *all of the alleged wrongful conduct occurred before July 15, 2013*.  "The fact that damages may have continued to occur from [pre-July 15, 2013] conduct after the enactment of the repeater law, does not make the [pre-July 15, 2013] conduct itself actionable."  *United Food*, 2014 WL 6465235, at *27.  EPPs' <u>Rhode Island Antitrust Act</u> claim should be dismissed.

**Utah**.  EPPs do not contest that the <u>Utah Antitrust Act</u> allows claims only by Utah citizens, and instead rely on unnamed hypothetical Utah class members for their claims, Opp'n at 18, which is insufficient as discussed in § III.A above.  Mem. at 12; *Aggrenox*, 2015 WL 1311352, at *20.  As no named plaintiff is a Utah citizen, EPPs' claim fails.

### C. EPPs Lack Standing Under *Illinois Brick* to Assert Claims Under the Massachusetts Consumer Protection Act

*Illinois Brick* bars EPPs' <u>Massachusetts Consumer Protection Act</u> claim, Mem. at 14-15, and EPPs present no argument in opposition.  Their claim should, therefore, be dismissed.

### D. EPPs Cannot Circumvent *Illinois Brick* by Asserting Antitrust Claims under Unjust Enrichment Theories in 24 Jurisdictions

In <u>24 jurisdictions</u>, EPPs' "unjust enrichment" claims should be dismissed because those

claims represent an attempted end-run around *Illinois Brick*. Mem. at 15-17. As one court

recently articulated when dismissing similar unjust enrichment claims brought by many of the

same indirect purchasers as here:

> The problem for indirect purchasers is that the **indirect-purchaser rule of**
> ***Illinois Brick* blocks them from recovery under federal antitrust law**. In an
> effort to get in on the [antitrust] game, **they attempt to build a Frankensteinian**
> **equivalent . . . to reach the very same conduct but without that formidable**
> **obstacle**, by stitching together a hodge-podge of state-law [consumer protection
> and unjust enrichment] claims. But the **plaintiffs cannot simply enumerate a**
> **long list of state-law claims for states where they might otherwise have no**
> **available antitrust recovery** and rely on the defendants and the court to sort out
> whether or how those laws can act as surrogates for antitrust law.

*Aggrenox*, 2015 WL 1311352, at *24 (emphasis added). Likewise, EPPs' blanket assertion of

unjust enrichment claims in 50 jurisdictions, predicated on the same conduct as their antitrust

claims, is simply an improper effort to use unjust enrichment as a surrogate for antitrust law

where antitrust law bars their claims. *See id.* Moreover, numerous courts have recognized that

the cases that EPPs rely on are outliers that go against the majority of cases holding that indirect

purchasers cannot assert antitrust claims under unjust enrichment theories in *Illinois Brick* states.

*E.g.*, *Niaspan*, 42 F. Supp. 3d at 763; *United Food*, 2014 WL 6465235, at *27-28; *DDAVP*, 903

F. Supp. 2d at 231-33.[14]

As a final attempt to avoid the inevitable finding that EPPs' unjust enrichment claims are

barred in *Illinois Brick* states, EPPs argue that the *Illinois Brick* Court did not intend to limit

antitrust liability but rather was concerned that enforcement "would be hindered if courts were

---

[14] EPPs' argument as to the requirements for displacing a common law cause of action, Opp'n at
43-44, ignores the significant precedent specifically addressing the interplay between *Illinois
Brick* and unjust enrichment. Mem. at 16 (citing cases); *In re Digital Music Antitrust Litig.*, 812
F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("[I]t is beyond peradventure that indirect purchasers may
not employ unjust enrichment to skirt the limitation on recovery imposed by [*Illinois Brick*.]");
*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010); *In re TFT-LCD
Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009).

forced to sort out and apportion *damages* from overcharges that may have been passed on from direct to indirect purchasers." Opp'n at 44. In fact, the *Illinois Brick* Court pointed to several concerns, including the risk to defendants of exposure to multiple liability. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726-32 (1977); *In re Terazosin*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001). EPPs' attempt to end-run the antitrust standing bar with unjust enrichment claims does nothing to assuage such concerns, and indeed amplifies them.

EPPs argue there is no concern here as to apportionment of damages or duplicative recovery because "recovery is not based on amounts Plaintiffs lost, but rather on *what Pfizer gained*." Opp'n at 44-45. Courts have rejected similar arguments that disgorgement would not create the risk of duplicative recovery, and have held that *Illinois Brick* prohibits such recovery. *See Terazosin*, 160 F. Supp. 2d at 1380; *F.T.C. v. Mylan Labs.*, 62 F. Supp. 2d 25, 41 (D.D.C. 1999) ("[P]ermitting disgorgement does raise the specter of duplicative recoveries . . . ."). This Court should thus dismiss EPPs' unjust-enrichment claims in 24 jurisdictions.[15]

## IV. EPPS' STATE LAW ANTITRUST CLAIMS MUST BE DISMISSED FOR ADDITIONAL REASONS

### A. EPPs Cannot Allege Primarily Intrastate Conduct in Five Jurisdictions

The Mississippi, New York, Tennessee, and District of Columbia antitrust statutes and the Massachusetts consumer protection statute limit prohibited conduct to conduct that predominantly occurred in or affects intrastate commerce. Pfizer does not argue that EPPs' claims are barred merely because the challenged conduct allegedly affected interstate commerce. Rather, the statutes disallow claims that are *interstate in nature* (District of Columbia), or require that the alleged conduct *primarily impact intrastate commerce* (New York, Tennessee, and

---

[15] Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Utah, Virginia, and Washington.

Massachusetts), or occur *wholly within the state* (Mississippi).  Mem. at 18-19.  While EPPs argue that "interstate anticompetitive injury is not mutually exclusive of intrastate competitive injury," Opp'n at 20, this misses the point.  These statutes are narrowly drawn to address only conduct that occurs predominantly or entirely within the state.  Mem. at 18-19.  EPPs' claims are fundamentally interstate in nature, and thus cannot satisfy intrastate requirements.

Further, under the Massachusetts Consumer Protection Act, the allegedly wrongful actions and transactions must have "occurred primarily and substantially within" Massachusetts.  Mass. Gen. Laws ch 93A § 11.  "[T]he center of gravity of the circumstances that give rise to the claim" must be in Massachusetts.  *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 800 (Mass. 2003) (no claim where alleged misconduct occurred primarily in D.C.).  Although EPPs rely primarily upon *In re Pharm. Indus. Average Wholesale Price Litig. ("AWP")*, 582 F.3d 156, 194 (1st Cir. 2009), to argue that effects felt in Massachusetts are sufficient (Opp'n at 26), the First Circuit later distinguished *AWP*, holding that "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 [of the Massachusetts Consumer Protection Act] cannot be satisfied."  *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012).[16]  EPPs do not and cannot allege that the center of gravity of circumstances giving rise to their claim occurred in Massachusetts, and their claim therefore must be dismissed.

**B. EPPs Fail to State a Claim Under California, New York and Tennessee Statutes that Prohibit Only Concerted Action**

EPPs' claims are based upon Pfizer's unilateral conduct in allegedly procuring a patent by fraud, and asserting that patent in sham litigation.  Opp'n at 1; EPP Compl. ¶¶ 3-4; *see also*

---

[16] EPPs cite *In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1010-11 (E.D. Mich. 2014), but in its cursory analysis of the § 11 claim, the court cited no authority.

EPP Compl. ¶¶ 280(b), 280(p), 280(v) (asserting California Cartwright Act, New York Donnelly Act, and Tennessee Trade Practices Act claims under Count I: "monopolization").  While EPPs do not dispute that the California Cartwright Act, New York Donnelly Act, and Tennessee Trade Practices Act apply only to unilateral conduct, they argue without support that a passing, conclusory reference in the Complaint to "reciprocal and concerted activity" in the form of settlement agreements with generics, Opp'n at 23 (citing EPP Compl. ¶ 279.d), is sufficient to render their unilateral monopolization claims actionable under those statutes.  This conclusory allegation does not pass muster, especially given that EPPs do not allege that these settlements were independently unlawful, or bring any conspiracy claims with respect to them.  Further, EPPs cannot dispute that their *Walker Process* and sham litigation claims are based on unilateral conduct only.  Their claims under these statutes should be dismissed.[17]

### C.  EPPs Fail to Plead Facts Plausibly Suggesting a Cognizable Future Injury as Required for Injunctive Relief Claims Under Federal Antitrust Law

To obtain injunctive relief under the Clayton Act, EPPs must allege a "significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation *likely* to continue or recur."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (emphasis added).  The threatened injury must be "real and immediate, not conjectural or hypothetical."  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  EPPs' vague suggestion that Pfizer *may* engage in "similar violations" in the future (Opp'n at 23-24) is mere conjecture, devoid of any allegations of significant and likely future harm, and not the type of threatened injury proper for injunctive relief.  Courts have rejected similar claims for injunctive relief where

---

[17] EPPs' suggestion that they could bring a claim under a *different* California statute and that they will seek to add an *additional* claim under N.Y. Gen. Bus. Law § 349 (Opp'n at 23 nn.40-41) does not save their existing California Cartwright Act and New York Donnelly Act claims.

plaintiffs could not demonstrate what fraudulent conduct might be undertaken in the future, what drugs might be involved, or which plaintiffs might be harmed by buying those drugs at supracompetitive prices.  *See, e.g.*, *DDAVP*, 903 F. Supp. 2d at 210; *In re Plavix Indirect Purchaser Antitrust Litig.*, No. 06-226, 2011 WL 335034, at *4 (S.D. Ohio Jan. 31, 2011) (possibility of "yet-to-be determined" future conduct related to "yet unidentified drug" too speculative for injunctive relief).

Nor can EPPs support their claim by alleging ongoing harm through continuing overcharges stemming from Pfizer's past conduct.  Opp'n at 23.  Courts routinely reject such arguments because, "[i]n the context of injunctive relief, . . . lingering monetary injury, without any ongoing threat of recurrent violations [to the plaintiffs], is not sufficient to confer standing to seek an injunction."  *DDAVP*, 903 F. Supp. 2d at 209 (quoting *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 19 (D.D.C. 2004)); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) (plaintiffs conflated damages from past injury that will be realized in the future, with the threat of future injury).  In any event, EPPs' "continuing overcharges" allegations are, at best, implausible speculation because, as EPPs concede, generic entry occurred in 2014.  EPP Compl. ¶ 207; *Relafen*, 221 F.R.D at 274 (no injunction where infringement suits terminated and generic entered market).  Thus, this Court should dismiss EPPs' injunctive relief claim.

## V.   EPPS' STATE CONSUMER PROTECTION CLAIMS MUST BE DISMISSED

EPPs' consumer protection claims in California, Massachusetts, and Vermont fail.  EPPs claim that they may bring an "unfair competition" claim under the <u>California Unfair Competition Law</u> ("UCL") without showing consumer deception or reliance.  Opp'n at 24-25.  Recent state court decisions have made clear, however, that 2004 amendments to the UCL were intended to "narrow the category of persons who could sue" to include only persons who suffered injury "as a result of the unfair competition," interpreting the phrase "as a result of" to require *actual*

18

*reliance*. *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 690-94 (Cal. Ct. App. 2010) (further clarifying that "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes"); *see also* Mem. at 21. The alleged misconduct here arises from actions before the PTO and litigation against competitors. EPPs cannot allege any actual *consumer reliance* on that conduct and therefore cannot bring claims under the UCL.[18]

Further, EPPs failed to comply with the Massachusetts Consumer Protection Act's pre-filing requirement.[19] As this requirement is part of the individual statute – rather than a generally applicable procedural rule as in *Shady Grove*, cited by EPPs (Opp'n at 27 n.56) – and meant to shape rights and remedies under the statute, the notice requirement applies in federal court. *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 217-18 (1st Cir. 2012) (requirement "not merely a procedural nicety," but "a prerequisite to suit"). Thus, under Justice Stevens's controlling opinion in *Shady Grove*, EPPs' claim under the MCPA must be dismissed.

Finally, only consumers, defined as someone who purchases goods "for the use or benefit of his or her business or in connection with the operation of his or her business," can bring a private action under the Vermont Consumer Fraud Act ("VCFA"), Vt. Stat. Ann. tit. 9 § 2451a(a). EPPs reimburse for drugs used by their plan participants; they do not purchase drugs for internal use or as an input for their businesses. Such third-party payors are not "consumers."

---

[18] Pfizer withdraws its argument regarding California's pre-filing notice requirement.

[19] EPPs were required to comply with the notice requirements because Pfizer holds assets in the Commonwealth. *See, e.g.*, *Bulmer v. MidFirst Bank, FSA*, No. 13-30089, 2014 WL 6070695, at *8-9 (D. Mass. Nov. 14, 2014) (where defendants held real property in state, plaintiff was required to send a demand letter). Pfizer has research facilities in Massachusetts. *See Cambridge, Massachusetts*, Pfizer, http://www.pfizer.com/research/science_and_technology/rd_locations/ma_cambridge (last visited April 20, 2015).

EPPs cite no case law finding them to be consumers[20] and they cannot sue under the VCFA.[21]

## VI.   EPPS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED

### A.   EPPs' Undifferentiated Assertion of Unjust Enrichment Claims Fails Entirely

EPPs seek to generally – and in a conclusory manner – plead unjust enrichment without pleading separate claims as to each jurisdiction.  EPP Compl. ¶ 284; Opp'n at 29-42.  They ask this Court to "infer" all the elements of each state's unjust enrichment law rather than plead them in accordance with Rule 8.  Opp'n at 29-30.  Courts routinely reject such an approach.  Mem. at 26-27.  A court recently dismissed a similar "hodge-podge of state-law [unjust enrichment claims]" brought by many of the same indirect purchasers as here (represented by many of the same lawyers), holding that:

> [I]ndirect purchasers . . . have *listed* claims under very many state laws, but they have not truly *pleaded* claims under those laws sufficient to show their entitlement to recovery under them, as required by [Fed. R. Civ. P.] 8 . . . .  Rather, they have pleaded federal antitrust claims and the factual foundation for them . . . and they merely allege that those claims are also actionable under general consumer-protection laws and as unjust enrichment.

*Aggrenox*, 2015 WL 1311352, at *23-24.  Likewise, another court has held:

> Plaintiff argues that . . . 'the variations in unjust enrichment law across the 50 states may not create any real substantive differences.' . . . Such '[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice' to withstand a motion to dismiss. . . . [T]he failure to cite to the law of a particular state in alleging common law claims deems them so vague that defendant cannot reasonably prepare a response.

---

[20] EPPs' cases, Opp'n at 27-28, do not establish that their status as third party reimbursers qualifies them as purchasing consumers.  *Elkins v. Microsoft Corp.*, 817 A.2d 9, 12, 20 (Vt. 2002) (allowing indirect purchasers to bring claim where there was no question that they purchased the product); *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 661-62, 671 (D. Vt. 2012) (same); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 167, 205-06 (D. Me. 2004) (assessing whether allegations of fraud or deception were necessary for buyers and lessee's of vehicles).

[21] EPPs contend that *State v. International Collection Service, Inc.*, 594 A.2d 426 (Vt. 1991), was abrogated by statute, but it was abrogated only to the extent it said that corporations could not be "consumers" for the purposes of the VCFA, which Pfizer does not challenge here.

*Hines v. Overstock.com Inc.*, No. 09-991, 2013 WL 4495667, at *12 (E.D.N.Y. Aug. 19, 2013) (citation omitted). *Bryant v. Washington Mutual Bank*, cited by EPPs, Opp'n at 29, is not to the contrary. The *Bryant* court quoted *Twombly*, and confirmed that on a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 524 F. Supp. 2d 753, 756 (W.D. Va. 2007).[22] EPPs fail even to assert the elements of unjust enrichment for each state, and their "bald assertion . . . that there are no consequential differences between those laws, is not entitled to deference." *Aggrenox*, 2015 WL 1311352, at *23.

### B.  Unjust Enrichment, an Equitable Remedy, Is Unavailable when an Adequate Remedy at Law Exists

EPPs do not deny that they cannot use "alternative" unjust enrichment claims to revive other claims. Opp'n at 42-43. Thus, EPPs may not plead unjust enrichment to escape the requirements of existing antitrust and consumer protection remedies. Mem. at 23-24.

### C.  Where EPPs Cannot Provide Any Basis on Which Pfizer Has Been Unjustly Enriched, Unjust Enrichment Claims Fail

EPPs' wholesale and conclusory pleading of unjust enrichment laws on a collective, rather than a state-by-state, basis leads them to the incorrect conclusion that they may bring unjust enrichment claims in states where they have pled no wrongful conduct. Opp'n at 32-33. Plaintiffs cannot assert unjust enrichment claims as a fallback in states where they have alleged no other antitrust or consumer protection claims. Mem. at 24-25. EPPs' unjust enrichment claims under the laws of 24 jurisdictions must therefore be dismissed.[23]

---

[22] *See also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (on a motion to dismiss, "we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments") (citation and quotation omitted).

[23] Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Kansas, Kentucky, Louisiana, Maryland, Missouri, Montana, New Jersey, Oklahoma,

**D.  Several States Invoked by EPPs Expressly Do Not Recognize Unjust Enrichment As an Independent Cause of Action**

California, Illinois, Georgia, and Mississippi do not permit an independent claim for unjust enrichment.  Mem. at 25-26.

**California.**  Despite EPPs' contentions, Opp'n at 30, the weight of authority, including California court decisions, holds that an independent cause of action for unjust enrichment simply does not exist in California.  Mem. at 25.[24]  The cases that EPPs cite are inapposite and unpersuasive.  In *Ghirardo*, the unjust enrichment claim arose under a California Civil Code section not at issue here.  *Ghirardo v. Antonioli*, 924 P.2d 996, 1002-03 (Cal. 1996).  Courts have also recognized that the *Ghirardo* court "merely mentioned a 'cause of action for unjust enrichment' in passing while discussing the remedy of restitution."  *Vincent Cons. Commodities, Inc. v. Am. Trading & Transfer, LLC*, No. 07-20, 2007 U.S. Dist. LEXIS 53680, at *8 (S.D. Cal. July 24, 2007).  Accordingly, the court in *Vincent* followed the lead of *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003), in holding that "California does not recognize a separate claim for unjust enrichment."  *Vincent*, 2007 U.S. Dist. LEXIS 53680, at *8; *see also Ang v. Bimbo Bakeries U.S.A., Inc.*, No. 13-01196, 2013 WL 5407039, at *11 (N.D. Cal. Sept. 25, 2013) (stating that more persuasive view is that California law does not permit an independent cause of action for unjust enrichment).

**Georgia**.  EPPs have provided no persuasive evidence that Georgia expressly recognizes such claims.  *Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*,

---

Pennsylvania, Puerto Rico, South Carolina, Texas, Virginia, Washington, and Wyoming.

[24] *See also Jogani v. Sup. Ct. of Los Angeles Cnty.*, 81 Cal. Rptr. 3d 503, 511 (Cal. Ct. App. 2008) ("[U]njust enrichment is not a cause of action.") (citation omitted); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814-15 (N.D. Cal. 2011) (same); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (same); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) (same).

737 F. Supp. 2d 380, 433 (E.D. Pa. 2010) (dismissing Georgia unjust enrichment claims because plaintiffs had not shown Georgia courts recognize unjust enrichment as an autonomous claim). The court in *Tuvim* noted that unjust enrichment is a quasi-contractual *remedy*, not an autonomous cause of action, and dismissed the unjust enrichment claim because there was no evidence of a quasi-contractual relationship. *Tuvim v. United Jewish Cmtys., Inc.*, 680 S.E.2d 827, 829-30 (Ga. 2009).[25]   In other words, the court simply observed the original quasi-contractual origin of the *remedy* of unjust enrichment where a breach of contract claim is pled, but there is no legal contract.  EPPs do not allege breach of contract and cannot recover under an unjust enrichment remedy, let alone plead it as a separate cause of action.

**Illinois**.  EPPs' cases, Opp'n at 31, support dismissal of their Illinois unjust enrichment claim.  As *Cleary v. Philip Morris Inc.*, cited by EPPs, notes, although older Illinois decisions may have recognized an independent cause of action for unjust enrichment, more recent, binding authority takes the opposite view.  656 F.3d 511, 516 (7th Cir. 2011);[26] Mem. at 25.[27]

**Mississippi**.  Contrary to EPPs' suggestion, Opp'n at 31, Mississippi unjust enrichment claims may not be pled in the alternative.  Mem. at 26; *In re Hydroxycut Mktg. & Sales Practices*

---

[25] In *Bigio v. Coca Cola Co.*, also cited by EPPs, the court addressed Georgia's unjust enrichment law only in passing, noting it had not been briefed on which jurisdictions' unjust enrichment laws applied.  It dismissed the unjust enrichment claim, finding that the result would be the same in all three jurisdictions.  675 F.3d 163, 176-77 (2d Cir. 2012) (citing *Tuvim*).

[26] *Raintree Homes, Inc. v. Village of Long Grove*, cited by EPPs, simply held that the Tort Immunities Act did not bar the unjust enrichment claim; it did not address whether the claim could stand alone.  807 N.E.2d 439, 445 (Ill. 2004).

[27] *See also Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008) (unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery"); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (dismissing Illinois unjust enrichment claim where consumer fraud claim dismissed); *Ibarrola v. Kind, LLC*, No. 13-50377, 2014 WL 3509790, at *5 (N.D. Ill. July 14, 2014) ("[A] claim for unjust enrichment cannot stand on its own in light of . . . dismissal of . . . ICFA and common law fraud claims."); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07-1871, 2011 WL 4007858, at *2 (E.D. Pa. Sept. 7, 2011) (same); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010).

*Litig.*, No. 09-2087, 2011 WL 2066651, at *3 (S.D. Cal. May 24, 2011) (plaintiff may not bring "free-standing claim of unjust enrichment").  That is because unjust enrichment in Mississippi is only "considered to be a remedy, rather than an independent theory of recovery."  *Mosley v. GEICO Ins. Co.*, No. 13-161, 2014 WL 7882149, at *5 (S.D. Miss. Dec. 16, 2014).

### E.  EPPs Fail to Allege the Quasi-Contractual Relationship Fundamental to an Unjust Enrichment Claim

EPPs' unjust enrichment claims should also be dismissed because the relationship between Pfizer and EPPs is too attenuated, as EPPs did not purchase Celebrex® directly from Pfizer.  EPP Compl. ¶ 255; *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, 263 F.R.D. 205, 216 (E.D. Pa. 2009) ("[T]he endpayor . . . has no relationship with GSK because it 'purchases' the drug not from GSK but from a 'direct purchaser' . . . .").  Additionally, EPPs cannot base unjust enrichment claims on allegations that the price of Celebrex® was improperly inflated as they received the benefit of their bargain.  *Plavix*, 2011 WL 335034, at *7 ("Any payment by Indirect Purchasers . . . was not a 'benefit conferred' but instead consideration for the patented drug"); *Dist. 1199P Health & Welfare Plan v. Janssen*, 784 F. Supp. 2d 508, 532-33 (D.N.J. 2011) (rejecting unjust enrichment claim in pharmaceutical case because "overpayment is insufficient . . . . Plaintiffs have not adequately pled a benefit that is unjust; rather, as pled, Plaintiffs received the benefit of their bargain"); *NMV*, 350 F. Supp. 2d at 210 ("unjust enrichment ordinarily does not furnish a basis for liability where parties voluntarily have negotiated, entered into and fully performed their bargain, as consumers do").

### 1.  EPPs Fail to Allege Privity or Something Approaching It in Five States

EPPs do not allege the requisite link between EPPs and Pfizer for unjust enrichment claims in Idaho, Illinois, Kansas, New York, and South Carolina.  *See* Mem. at 28-31.

**Idaho**.  In Idaho, a plaintiff must allege the existence of a "cognizable legal relationship"

24

between the parties or that the plaintiff held some property interest in the benefit defendant received.  Mem. at 29.  The cases cited by EPPs do not hold differently.  Opp'n at 36.  *Hausam v. Schnabl* did not address the issue and, in fact, involved a defendant who *did* receive a direct benefit.  887 P.2d 1076, 1077, 1081 (Idaho 1994) (court held that sole proprietor business owner was unjustly enriched when a loan taken out by his son for use by the business was not repaid).[28]

**Illinois**.    To assert an unjust enrichment claim in Illinois, a relationship must exist between defendant and plaintiff.  Mem. at 29; *see also Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003) ("To accept the plaintiffs' theory of liability would create an action for unjust enrichment in every case where the commission of a tort results in the plaintiff being required to expend funds . . . ."); *Int'l Capital Grp. v. Starrs*, No. 10-3275, 2010 WL 3307345, at *1 (N.D. Ill. Aug. 19, 2010) (no unjust enrichment claim where plaintiff "does not allege that [defendant] has any duty to repay the [money]"); *Hickman*, 683 F. Supp. 2d  at 797.  No such relationship exists here.  EPPs offer no authority to the contrary.  Their case, *Sobel v. Franks*, Opp'n at 37, merely addressed the issue in passing noting that breach of fiduciary duty was an affirmative defense to an unjust enrichment claim (which the court labeled a "quasi-contractual claim"), just as it would be to a contract claim.  633 N.E.2d 820, 828-29 (Ill. App. Ct. 1994).  It does not support EPPs' position.

**Kansas**.    Kansas requires a specific connection between plaintiff and defendant; a plaintiff must plead that the defendant obtained a benefit directly conferred by the plaintiff with appreciation or knowledge of that benefit.  *See Haz-Mat Response, Inc. v. Certified Waste Servs.*

---

[28] Likewise, in *Ellmaker v. Tabor*, the court simply held that the manager of a limited liability company was not liable for debt incurred by that company.  No. 41846-2014, 2015 WL 797642, at *10 (Idaho Feb. 26, 2015).

*Ltd.*, 910 P.2d 839, 847 (Kan. 1996).[29]  EPPs plead no such connection here.  EPPs rely on a case that is inapposite, Opp'n at 37, as plaintiffs there alleged that defendant beverage companies knowingly and deceptively distributed harmful products to consumers.  *Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007).  Here, EPPs do not and cannot allege that Pfizer knowingly deceived them about the product they purchased.

**New York**.  EPPs concede that New York's law of unjust enrichment requires that the plaintiff's relationship to the defendant not be "too attenuated."  Opp'n at 39.  EPPs, however, fail entirely to address the weight of authority that has squarely found the relationship between a manufacturer and an indirect purchaser – like the relationship between Pfizer and EPPs here – to be too attenuated for purposes of an unjust enrichment claim.  Mem. at 30 (collecting cases); *SRAM*, 2010 WL 5094289, at *7 (dismissing New York claim because indirect purchasers' relationship to defendants too attenuated); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 547 (S.D.N.Y. 2008) ("The alleged link between plaintiffs and defendants – from defendants' manipulations to the general natural gas futures market to plaintiffs' trades – is too attenuated to support an unjust enrichment claim.").

**South Carolina**.  In South Carolina, a plaintiff does not have a cause of action for unjust enrichment unless the defendant had a duty to the plaintiff, and EPPs do not and cannot allege any such duty owed by Pfizer to EPPs.  Mem. at 30.  EPPs quote but make no attempt to

---

[29]  Although the facts of *Haz-Mat* involved a subcontractor-owner relationship, the special circumstances requirement in the absence of privity is not limited to such a situation.  *See Johnson v. Simonton Bldg. Props., Inc.*, No. 08-2198, 2009 WL 902409, at *4 (D. Kan. Mar. 31, 2009); *J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 744-45 (Kan. 1988) (no special circumstances as required for unjust enrichment claim for non-subcontractor plaintiff); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-01819, 2010 WL 5094289, at *6 (N.D. Cal. Dec. 8, 2010).

distinguish the cases[30] cited by Pfizer, which expressly set out the duty requirement.  Nor do they address other cases that clearly support Pfizer's interpretation.  *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005) (cases require plaintiff to establish a duty owed to plaintiff by defendant in order to maintain a cause of action for unjust enrichment).

### 2. EPPs Fail to Allege a Relationship with Pfizer Leading to a Direct Benefit, Which is Required in at Least 24 Jurisdictions

Most courts have held that any benefit conferred upon manufacturers by indirect purchasers is too remote and indirect to support an unjust enrichment claim.  Mem. at 31-34.  As discussed, Idaho, Illinois, Kansas, New York, and South Carolina require a plaintiff to establish something akin to privity in order to support an unjust enrichment claim.  EPPs' position fares no better for the remainder of the 24 jurisdictions that all require the showing of a direct benefit.

The authority EPPs cite to support their claims under Alabama, Maine, Maryland, Massachusetts, and Michigan law – mostly for general statements defining unjust enrichment – either did not involve indirect purchasers or did not directly address the issue, and as such is inapposite.  *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 237 (M.D. Pa. 2010) (addressing unrelated issue of whether plaintiff could assert unjust enrichment claim where state antitrust law did not expressly limit relief to compensatory damages).  EPPs' arguments against a direct benefit requirement also fail for the following reasons:

**Arizona**.  The case cited by EPPs, *Brown v. Pinnacle Restoration LLC*, 12-0550, 2013 WL 3148654 (Ariz. Ct. App. June 18, 2013), is distinguishable.  A condominium owner who paid insurance fees through a homeowners' association was impoverished when a contractor, who was paid via those same insurance fees to fix the owner's condominium, failed to finish the

---

[30]*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000); *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 512 (S.C. Ct. App. 2002).

repairs. *Id*. at *1. The court recognized that there must be a "connection between the enrichment and impoverishment" and found there to be such a direct connection because the plaintiff had not received the benefit of her bargain based on her paid insurance coverage and was forced to hire another contractor to complete the repairs that defendant had neglected to finish. *Id*. at *2-3. Here, there is no assertion that EPPs did not receive the product they bargained for, or that they were forced to buy additional products due to Pfizer's conduct. Except to remark, without explanation, that it was "poorly reasoned," EPPs fail to counter Pfizer's case, which, by contrast, dismissed indirect purchaser unjust enrichment claims under Arizona law for lack of the requisite link between plaintiff and defendant. Opp'n at 35 n.72.

**District of Columbia**. The District of Columbia has a direct benefit requirement. Mem. at 31; *see also True v. Conagra Foods, Inc.*, No. 07-00770, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011) ("[T]he District of Columbia impose[s] this 'direct benefit' requirement"). EPPs' citation to *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 4501223, at *12 (N.D. Cal. Sept. 28, 2011) is unavailing. Opp'n at 35. The *Flat Panel* court cited no binding District of Columbia case that dispenses with a direct benefit requirement, and the only reason it declined to follow *Conagra Foods* was that, in *Conagra*, the plaintiff had conceded that a direct benefit was required under D.C. law. Moreover, the court appears to have misconstrued *Mineba Co. v. Papst*, 444 F. Supp. 2d 68, 186 (D.D.C. 2006), which denied the plaintiff's unjust enrichment claim, in part, because the plaintiff had not "*afforded any direct benefit*" to the defendant. *Id.* at 186 (emphasis added).

**Florida**. EPPs provide no controlling authority of their own, Opp'n at 35, and do nothing to discredit or distinguish the many cases cited by Pfizer that establish a direct benefit requirement under Florida law. Mem. at 32; *Suboxone*, 2014 WL 6792663, at *32 ("Florida law

requires that a benefit be conferred upon the defendant directly . . . ."); *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009) (unjust enrichment claim dismissed for failure to demonstrate direct benefit conferred on defendant); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. Dist. Ct. App. 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants.") (citation omitted); *Flonase*, 692 F. Supp. 2d at 544 ("Florida law is clear; it requires that a plaintiff confer a direct benefit upon a defendant in order to state a claim for unjust enrichment.").[31]

**Georgia**.  Notwithstanding EPPs' misstatements to the contrary, Opp'n at 36, a plain reading of *Scott* and *Brenner* establishes that Georgia law requires plaintiffs to show a direct benefit.  *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000) (unjust enrichment claim properly dismissed because defendants had not "received the direct benefit" from plaintiff); *Brenner v. Future Graphics*, *LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007) (granting summary judgment because "plaintiff has failed to cite to any authority for pursuing an unjust enrichment claim against a third party who indirectly received a benefit").  EPPs offer no controlling authority of their own.  Opp'n at 36.  In *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010), relied upon by EPPs, the court declined to dismiss an unjust enrichment claim on direct benefit grounds because it had not located Georgia

---

[31] The cases EPPs rely on are inapposite. EPPs rely heavily on *In re Processed Egg Products Antitrust Litig.*, but the court in that case itself acknowledged that several Florida courts "have determined that . . . . a 'direct benefit' is required."  851 F. Supp. 2d 867, 928 (E.D. Pa. 2012).  EPPs' other cases do not show that a direct benefit is not required.  *Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (finding that "[p]laintiffs *directly* conferred a benefit") (emphasis added); *Romano v. Motorola, Inc.*, No. 07-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (no "unjust enrichment [claim] unless the plaintiff can allege that he conferred a direct benefit on the defendant."); *Stermer v. SCK Solutions, LLC*, No. 08-61751, 2009 WL 1849955, at *6 (S.D. Fla. June 26, 2009) (direct benefit could be found where there was a payment arrangement with intermediary); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) (whether direct benefit was conferred at all could not be resolved on the motion to dismiss).

authority so restricting unjust enrichment claims. Here, however, Pfizer has cited authority clearly establishing a direct benefit requirement under Georgia law.

**New Jersey**. EPPs cite only one non-controlling case, Opp'n at 38, and do not even attempt to distinguish Pfizer's cases, which find that New Jersey imposes a direct benefit requirement. Mem. at 32; *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) ("[Plaintiff] purchased . . . from [retailer] and not directly from [defendant]. . . . Therefore, his benefit is not directly conferred upon [defendant] and his unjust enrichment claim is dismissed."); *In re Rezulin Prods. Liability Litig.*, 390 F. Supp. 2d 319, 343 (S.D.N.Y. 2005) ("[A]bsent a mistake by the person conferring the benefit, [New Jersey] unjust enrichment claims require 'some direct relationship between the parties.'").

**North Carolina**. North Carolina state courts interpreting *Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989), have concluded that a direct benefit is necessary for an unjust enrichment claim. *See, e.g.*, *Baker Constr. Co. v. City of Burlington*, 683 S.E.2d 790, at *6 (N.C. Ct. App. 2009) ("[T]his Court has limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party."); *Nacco Materials Handling Grp, Inc. v. Kollmorgen Corp.*, No. 4:14-110, 2015 WL 413609, at *3 (E.D.N.C. Jan. 30, 2015); *Flonase*, 692 F. Supp. 2d at 545-46 ("[T]he Supreme Court of North Carolina would hold that a direct benefit is required . . . ."); *In re Aftermarket Filters Antitrust Litig.*, 08-4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010).

*Embree Const. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992), cited by EPPs, is distinguishable because there *was* a direct benefit. A general contractor who built a restaurant for a property owner sued the bank that had provided the loan on the project when the bank refused to release the funds after the building was complete. *Id.* at 923. Because the property

30

owner defaulted on the loan, the ownership of the building transferred to the bank, which thus received the direct benefit of the bargain from the plaintiff contractor.  *Id.*  Similarly, in *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, on which EPPs rely, the court specifically noted that the defendant banks "had a direct interest in the construction project" at issue, pointing to the fact that the banks "held a first-priority security interest that was so important to them that they sent their own engineer to monitor . . . and report on [plaintiffs'] work" and that unlike in *Effler*, the bank did not receive a "benefit by grace" but rather paid the plaintiff each month as plaintiff made progress on the construction project.  72 F. App'x 916, 921 (4th Cir. 2003).  In fact, as in *Embree*, the banks foreclosed on the collateral, receiving a direct benefit from the plaintiff contractor, who had not received payment from the banks.  *Id.* at 919.

      **North Dakota**.  EPPs cite no controlling authority, and contrary authority shows that North Dakota has a direct benefit requirement.  Mem. at 33; *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 124 (N.D. 2005) ("Indisputably, where one is afforded recovery from the person with whom he has a contract, he cannot also recover from third persons incidentally benefited by his performance.") (internal citation and quotations omitted); *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 680 N.W.2d 634, 642 (N.D. 2004).

      **Pennsylvania**.  EPPs claim that *Stutzle v. Rhone-Poulenc S.A.*, No. 002768, 2003 WL 22250424, at *1-2 (Pa. Com. Pl. Sept. 26, 2003), is an outlier, Opp'n at 40, but ignore that many courts have held that Pennsylvania requires a direct benefit.  *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721-22 (E.D. Pa. 2013) ("The benefit must be conferred by the plaintiff directly – indirect benefits bestowed by third parties" insufficient); *SRAM*, 2010 WL 5094289, at *7 (no unjust enrichment because indirect purchasers did not confer direct benefit on manufacturers).  Moreover, *Pennsylvania v. TAP Pharm. Prods., Inc.*, which EPPs cite, did not hold that a direct

31

benefit was not required.  885 A.2d 1127, 1137-38 (Pa. Commw. Ct. 2005).  Rather, it concluded

that the benefit (an increase in defendant's market share as a result of allegedly false prices

intended to cause Pennsylvania Medicaid to over-reimburse pharmacies) was sufficiently direct.

*Id.*  No such false pricing scheme is alleged here.  Further, *D.A. Hill Co. v. Clevetrust Realty

Investors* held that a subcontractor cannot recover from a third party that indirectly benefitted

unless the third party "requested the benefit or misled the other parties."  573 A.2d 1005, 1010

(Pa. 1990).  EPPs do not claim Pfizer communicated with or misled them in any way.

**Rhode Island**.  EPPs cite no controlling authority of their own, Opp'n at 40, and,

notwithstanding EPPs' misstatements to the contrary, a plain reading of Rhode Island case law

shows that a direct benefit is required for unjust enrichment claims.  Mem. at 33.

 **Texas**.  EPPs cite no on-point Texas authority and do not adequately address *Texas v.

American Tobacco Co.*, which clearly finds a direct benefit requirement.  14 F. Supp. 2d 956,

972 (E.D. Tex. 1997) ("[T]he alleged benefit enjoyed by Defendants is too attenuated and

indirect to find support under the theory of unjust enrichment as enunciated in Texas," which

requires "a benefit obtained by fraud, duress, or undue advantage.") (citation omitted).  EPPs

make no allegations of fraud, duress, or undue advantage directed towards them.

**Utah**.  EPPs misstate the facts and legal conclusions of *Concrete Prods. Co. v. Salt Lake

Cnty.*, which expressly rejected an unjust enrichment claim for lack of a "direct benefit."  734

P.2d 910, 911-12 (Utah 1987); *see also Berrett v. Stevens*, 690 P.2d 553, 557-58 (Utah 1984)

(rejecting unjust enrichment claim where party received only incidental benefit and claimant

obtained benefit of their bargain).  EPPs cite no contrary controlling authority.  Opp'n at 41.

**Washington**.  Notwithstanding EPPs' contentions to the contrary, the court in *Keil v.

Scholten* clearly embraced the direct benefit requirement, holding that the plaintiff could not

have conferred a benefit on the defendant by paying money to a third party, who then in turn paid the defendant under a separate contract.   No. 48051-1, 2002 WL988562, at *5 (Wash. Ct. App. Feb. 4, 2002).  The benefit conferred ran from the third party to the defendant and was too remote to support an unjust enrichment claim.  *Id.*  The same is true here, and EPPs offer no authority that compels a different result under Washington law.

**West Virginia**.  This Court should follow *In re Refrigerant Compressors Antitrust Litig.*, 09-2042, 2013 WL 1431756, at *25-26 (E.D. Mich. Apr. 9, 2013), which required a direct benefit.  EPPs provide no contrary controlling authority.  As the Fourth Circuit has noted, no West Virginia case has held that an indirect recipient of a benefit conferred by a plaintiff can be subject to a claim of unjust enrichment.  *Johnson v. Ross*, 419 F. App'x 357, 362 (4th Cir. 2011).

**Wisconsin**.  *Suboxone*, 2014 WL 6792663, cited by EPPs, did not address the direct benefit requirement.  Opp'n at 42.  This court should follow *Refrigerant Compressors*, 2013 WL 1431756, at *25-26, which dismissed indirect purchaser plaintiffs' Wisconsin unjust enrichment claims for failure to show a direct benefit.

**Wyoming**.  EPPs say that *Boyce v. Freeman* did not require a direct benefit, but *Boyce* clearly sets forth such a requirement.   39 P.3d 1062, 1066 (Wyo. 2002) ("One party must actually supply a benefit to the party to be charged with the expectation of compensation therefore.  The party to be charged must accept the benefit and know that the supplying party expects compensation therefore.").  EPPs provide no authority to the contrary.  Opp'n at 42.

EPPs' unjust enrichment claims for the above jurisdictions should thus be dismissed for failure to establish the conferral of a direct benefit from EPPs to Pfizer.

## CONCLUSION

For the foregoing reasons, this Court should dismiss EPPs' claims with prejudice.

Dated:  April 20, 2015

Respectfully submitted,

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Mark E. Warmbier
Virginia State Bar No. 77993
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com
mewarmbier@kaufcan.com

Dimitrios T. Drivas (*pro hac vice*)
Robert A. Milne (*pro hac vice*)
Brendan G. Woodard (*pro hac vice*)
Raj S. Gandesha (*pro hac vice*)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
212-819-8200

*Attorneys for Defendants*
*Pfizer Inc., G.D. Searle LLC, and Pfizer Asia*
*Pacific PTE, Ltd.*

## CERTIFICATE OF SERVICE

On April 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to the following counsel of record:

| | |
|---|---|
| Kenneth A. Wexler<br>Amy E. Keller<br>Dawn M. Goulet<br>Justin N. Boley<br>Kara Elgersma<br>**WEXLER WALLACE LLP**<br>55 West Monroe Street, Suite 3300<br>Chicago, IL 60603<br>Tel: (312) 346-2222<br>Fax: (312) 346-0022<br>kaw@wexlerwallace.com<br>aek@wexlerwallace.com<br>dmg@wexlerwallace.com<br>jnb@wexlerwallace.com<br>kae@wexlerwallace.com | Jonathan D. Karmel<br>**KARMEL LAW FIRM**<br>221 N. LaSalle Street, Suite 1307<br>Chicago, IL 60601<br>Tel: (312) 641-2910<br>jon@karmellawfirm.com<br><br>Wyatt B. Durrette, Jr., VSB No. 04719<br>J. Buckley Warden IV, VSB No. 79183<br>**DURRETTECRUMP PLC**<br>1111 East Main Street, 16th Floor<br>Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com<br>bwarden@durrettecrump.com |
| *Counsel for End-Payor Plaintiff United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund and the Proposed End-Payor Class* | |
| Jeffrey L. Kodroff<br>John A. Macoretta<br>**SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>Tel: (215) 496-0300<br>Fax: (215) 496-6611<br>jkodroff@srkw-law.com<br>jmacoretta@srkw-law.com | Karen Hanson Riebel<br>Heidi M. Silton<br>**LOCKRIDGE GRINDAL NAUEN PLLP**<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>Fax: (612) 339-0981<br>khriebel@locklaw.com<br>hmsilton@locklaw.com |
| Wyatt B. Durrette, Jr., VSB No. 04719<br>J. Buckley Warden IV, VSB No. 79183<br>**DURRETTECRUMP PLC** | |

| | |
|---|---|
| 1111 East Main Street, 16th Floor<br>Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com<br>bwarden@durrettecrump.com | |

*Counsel for End-Payor Plaintiff International Union of Operating Engineers Local 49 Health and Welfare Fund and the Proposed End-Payor Class*

| | |
|---|---|
| Daniel E. Gustafson<br>Jason S. Kilene<br>**GUSTAFSON GLUEK**<br>120 South Sixth Street, Suite 2600<br>Minneapolis, MN 55402<br>Tel: (612) 333-8844<br>Fax: (612) 339-6622<br>dgustafson@gustafsongluek.com<br>jkilene@gustafsongluek.com<br><br>Wyatt B. Durrette, Jr., VSB No. 04719<br>J. Buckley Warden IV, VSB No. 79183<br>**DURRETTECRUMP PLC**<br>1111 East Main Street, 16th Floor<br>Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com<br>bwarden@durrettecrump.com<br><br><br>*Counsel for End-Payor Plaintiffs Wisconsin Masons' Health Care Fund and Ironworkers Local 383 Health Care Plan and the Proposed End-Payor Class* | Jeffrey L. Kodroff<br>John A. Macoretta<br>**SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>Tel: (215) 496-0300<br>Fax: (215) 496-6611<br>jkodroff@srkw-law.com<br>jmacoretta@srkw-law.com<br><br>Wyatt B. Durrette, Jr., VSB No. 04719<br>J. Buckley Warden IV, VSB No. 79183<br>**DURRETTECRUMP PLC**<br>1111 East Main Street, 16th Floor<br>Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com<br>bwarden@durrettecrump.com<br><br><br>*Counsel for End-Payor Plaintiff AFSCME Health and Welfare Fund and the Proposed End-Payor Class* |
| Jayne A. Goldstein<br>**POMERANTZ LLP**<br>1792 Bell Tower Lane, Suite 203<br>Weston, FL 33326 | Wyatt B. Durrette, Jr., VSB No. 04719<br>Barrett Erskine Pope<br>**DURRETTECRUMP PLC**<br>1111 East Main Street, 16th Floor |

| | |
|---|---|
| Tel: (954) 315-3454<br>Fax: (954) 315-3455<br>jagoldstein@pomlaw.com | Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com |
| *Counsel for End-Payor Plaintiff Barbara Stanley and the Proposed End-Payor Class* | |
| Bernard J. DiMuro<br>**DiMuroGinsberg, P.C.**<br>1101 King Street, Suite 610<br>Alexandria, VA 22314<br>Tel: (703) 684-4333<br>Fax: (703) 548-3181<br>bdimuro@dimuro.com | William H. Narwold<br>Donald A. Migliori<br>Michael M. Buchman<br>John A. Ioannou<br>Alex R. Straus<br>**Motley Rice LLC**<br>600 Third Avenue, Suite 2101<br>New York, NY 10016<br>Tel: (212) 577-0040<br>Fax: (212) 577-0054<br>bnarwold@motleyrice.com<br>dmigliori@motleyrice.com<br>mbuchman@motleyrice.com<br>jioannou@motleyrice.com<br>astraus@motleyrice.com |
| *Counsel for End-Payor Plaintiff A.F. of L. – A.G.C. Building Trades Welfare Plan and the Proposed End-Payor Class* | |
| Susan R. Podolsky<br>**Law Office of Susan R. Podolsky**<br>1800 Diagonal Road, Suite 600<br>Alexandria, VA 22314<br>Tel: (571) 366-1702<br>Fax: (703) 647-6009<br>spodolsky@podolskylaw.com | Gregory S. Asciolla<br>Matthew J. Perez<br>**Labaton Sucharow LLP**<br>140 Broadway<br>New York, NY 10005<br>Tel: (212) 907-0700<br>Fax: (212) 818-0477<br>gasciolla@labaton.com<br>ebelfi@labaton.com<br>mdemato@labaton.com<br>mperez@labaton.com |
| *Counsel for End-Payor Plaintiff International Association of Heat and Frost Insulators and Asbestos Workers Local #6 Health and Welfare Fund and the Proposed End-Payor Class* | |

| | |
|---|---|
| Wyatt B. Durrette, Jr.<br>Brittany Joy Falabella<br>**DURRETTECRUMP PLC**<br>1111 East Main Street, 16th Floor<br>Richmond, VA 23219<br>(804) 775-6900<br>(804) 775-6911 (fax)<br>wdurrette@durrettecrump.com<br>bfalabella@durrettecrump.com | Joshua Seth Devore<br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>1100 New York Ave NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>(202) 408-4600<br>(202) 408-4699<br>jdevore@cohenmilstein.com |
| *Counsel for End-Payor Plaintiff Central Pennsylvania and Regional Health and Welfare Fund and the Proposed End-Payor Class* | *Counsel for End-Payor Plaintiff Int'l Union of Operating Eng'rs, Local 138 Welfare Fund and the Proposed End-Payor Class* |

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Mark E. Warmbier
Virginia State Bar No. 77993
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com
mewarmbier@kaufcan.com